07 CV 5614

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE MARRERO

--------------------------------------------------------

ROBIN STEPHENS,

Plaintiff,

-against-

SUPER SHUTTLE, INC., SUPER SHUTTLE
INTERNATIONAL, INC., NEW YORK CITY TRANSIT
AUTHORITY, MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY and "JOHN
DOE," NYCT BUS DRIVER

Defendants.

--------------------------------------------------- x

NOTICE OF REMOVAL

RECEIVED
JUN 1 2 2007
U.S.D.C. S.D.N.Y.
CASHIERS

The filing Defendants, by their attorneys, state:

1.     This notice of removal, filed by the attorneys for the defendants NEW YORK

CITY TRANSIT AUTHORITY and MANHATTAN AND BRONX SURFACE TRANSIT

OPERATING AUTHORITY, collectively the "TA defendants," has been consented to in writing

by the attorney for the remaining named suable defendants, Super Shuttle, Inc., and SuperShuttle

International, Inc.  That consent is attached to and incorporated in this notice.

2.     Defendants desire to exercise their right under 28 U.S.C. §§ 1441(a), 1441(b)

[first sentence], and 1446, to remove this action to this Court from the Supreme Court of the State

of New York, County of New York, in which it is now pending under the name and style of

Robin Stephens, plaintiff, against Super Shuttle, Inc., et al., defendants, Index No. 104791/2007.

3.     This is a civil action in which this Court has original jurisdiction pursuant to 28

U.S.C. § 1331.  Under 28 U.S.C. §§ 1441(a) and 1441(b) (first sentence), defendants are entitled

to remove it from the New York Supreme Court to this Court.

974895
2007-9948

4.    The plaintiff's complaint asserts claims involving alleged conduct, by the defendants, all in alleged violation of plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*; and the Rehabilitation Act of 1974, 29 USC § 701. As these claims, on the face of the complaint, are expressly stated to arise under these laws of the United States, this action is properly in this Court pursuant to 28 U.S.C. § 1331, and removable under 28 U.S.C. § 1441(b), first sentence.

5.    In accordance with 28 U.S.C. § 1446(a), defendants have attached to this Notice of Removal a copy of the Summons and the Complaint. Defendants also attached an executed Stipulation extending the TA Defendants' time to answer the Complaint to July 16, 2007.

6.    This Notice of Removal is timely. The TA Defendants received the Summons and Complaint (dated April 9, 2007) by personal service on May 24, 2007, and the other defendants, if served, received the Summons and Complaint thereafter. In accordance with 28 U.S.C. § 1446(b), defendants are filing this Notice of Removal within 30 days after their initial receipt of the Summons and the Complaint. Should this Court determine that this action was not removable or that defendants improperly removed it, they will pay all costs and disbursements incurred by reason of this removal.

7.    Defendants will promptly serve written notice of the filing of this Notice of Removal with the Clerk of the New York Supreme Court, County of New York, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, this Court should accept jurisdiction of this action and place it on this

Court's docket for further proceedings as though it had been originally commenced in this Court.

Dated: Brooklyn, New York
       June 12, 2007

*Ann Burton Goetcheus*

**Ann Burton Goetcheus (ABG 7265)**

Office of the General Counsel
NEW YORK CITY TRANSIT AUTHORITY
130 Livingston Street (12th Floor)
Brooklyn, New York 11201
(718) 694-3889
Attorney for TA Defendants


Att.:    Original Consent for Removal by
         Super Shuttle Defendants

         Summons and Complaint

         Stipulation Extending Time to Respond to Complaint

# *CONSENT*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ROBIN STEPHENS,

                             **Plaintiff,**

               -against-

SUPER SHUTTLE, INC., SUPERSHUTTLE
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY,
MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY and
"JOHN DOE," NYCT BUS DRIVER

                             **Defendants.**

-------------------------------------------------------------------X

Index #104791/2007

**CONSENT TO
REMOVAL**

        Defendants, SuperShuttle International, Inc., and Super Shuttle, Inc., for

themselves and all subsidiaries that are or may be proper parties defendant, by the undersigned,

an attorney duly admitted to practice in the courts of the State of New York, consent to the

removal of this action from the Supreme Court of the State of New York, County of New York

to the United States District Court for the Southern District of New York.

Dated:   Washington, D.C.
         June 8,  2007

                     By _____
                         Thomas Patton (TP-6189)
                         Tighe Patton Armstrong & Teasdale
                         Attorneys for Defendant SuperShuttle
                           International, Inc.
                         1747 Pennsylvania Avenue, N.W.
                         Suite 300
                         Washington, D.C. 20006
                         (202) 454-2840

# *COMPLAINT*

*Shafe*
*George Herrera*
*4/28/07*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
*BU-06-04-08-10-001*

Index No. 07/104791

ROBIN STEPHENS,

    Plaintiff

    v.

Date purchased:
April 9, 2007
Venue is based on
Places where the Acts
Sued on Occurred

SUPER SHUTTLE, INC.,
SUPERSHUTTLE INTERNATIONAL, INC.,
NEW YORK CITY TRANSIT
AUTHORITY, MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY, and "JOHN DOE",
NYCT bus driver

    Defendants

2007 MAY 24 PM 12: 58
LAW DEPARTMENT
RECEIVED
MABSTOA

*52/252 aut/n TAd 01*

*MABSTOA*
*130 LIVINGSON ST*
*BROOKLYN, NY 11201*

To: ~~SUPER SHUTTLE, INC.~~

SUMMONS WITH
NOTICE

You are hereby summoned to appear in the above entitled
case within twenty days of the date on which this
Summons is served upon you, or within thirty days is
service is made by a method other than personal service.
in the event of your default in answering, judgment will be
taken against you for the relief demanded herein.

Aaron David Frishberg
Attorney for Plaintiff
116 W. 111th Street
New York, N.Y. 10026
212 740 4544

NATURE OF THE ACTION

civil rights, intentional and negligent infliction of emotional distress

RELIEF SOUGHT

Money damages in an amount to be determined by the trier of fact, in excess of the
jurisdictional limit of any lower court



ENTERED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ROBIN STEPHENS,

    Plaintiff

    v.

SUPER SHUTTLE, INC.,
SUPERSHUTTLE INTERNATIONAL, INC.,
NEW YORK CITY TRANSIT
AUTHORITY, MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY, and "JOHN DOE",
NYCT bus driver

    Defendants

Index No. 07/104791

Date purchased:
April 9, 2007
Venue is based on
Places where the Acts
Sued on Occurred

RECEIVED
MABSTOA
2007 MAY 24  PM 12: 58
LAW DEPARTMENT

---

SUMMONS WITH
NOTICE

To: SUPER SHUTTLE, INC.

You are hereby summoned to appear in the above
entitled case within twenty days of the date on which this
Summons is served upon you, or within thirty days is
service is made by a method other than personal service.
in the event of your default in answering, judgment will
be taken against you for the relief demanded herein.

Aaron David Frishberg
Attorney for Plaintiff
116 W. 111th Street
New York, N.Y. 10026
212 740 4544

NATURE OF THE ACTION

civil rights, intentional and negligent infliction of emotional distress

RELIEF SOUGHT

Money damages in an amount to be determined by the trier of fact, in excess of the



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ROBIN STEPHENS,

     Plaintiff

     v.

SUPER SHUTTLE, INC.,
SUPERSHUTTLE INTERNATIONAL, INC.,
NEW YORK CITY TRANSIT AUTHORITY,
MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY, and "JOHN DOE," NYCT
BUS DRIVER
     Defendants

Index No. 07/104791

COMPLAINT

---

Plaintiff, by her attorney, Aaron David Frishberg, complaining of the acts of Defendants, avers as follows:

## PARTIES

1.    At all times mentioned herein, Plaintiff, ROBIN STEPHENS, was a resident of Colorado, who was disabled within the meaning of the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Code. At all times mentioned herein, Plaintiff was qualified to use the services of a provider of public transportation, in that, with a reasonable modification of the transportation program to accommodate her disabilities, she was capable of using public transportation.

2.    Plaintiff has a disability which impairs her in the major life function of walking and uses a power wheelchair. Plaintiff is also disabled in the major life function of speech, and many people have some difficulty understanding her speech, although most people can understand her if they listen carefully and persistently.

3.    Defendant SUPER SHUTTLE, INC. was at all times mentioned herein a domestic business corporation organized under the laws of New York.

4.    Defendant SUPERSHUTTLE, INTERNATIONAL, INC., was at all times mentioned herein a Colorado business corporation doing business in New York. Upon information and belief, Defendant SUPER SHUTTLE, INC. was at all times mentioned herein a wholly owned subsidiary of Defendant SUPERSHUTTLE, INTERNATIONAL, INC. As used

herein, "SUPERSHUTTLE" refers to the operations of SUPERSHUTTLE, INC. in New York City, under the control of SUPER SHUTTLE, INC. and upon information and belief, Defendant SUPERSHUTTLE, INTERNATIONAL, INC. At all times mentioned herein, all employees and agents of Supershuttle acted under the direction and control of SUPER SHUTTLE, INC., and upon information and belief, SUPERSHUTTLE INTERNATIONAL, INC.

5.    At all times mentioned herein, SUPER SHUTTLE, INC. and SUPERSHUTTLE, INTERNATIONAL, INC. solicited the business of persons seeking to travel between New York area airports and Manhattan, including soliciting the business of persons with disabilities, including persons who use wheelchairs, and held themselves out as capable of providing equal service to persons with disabilities, including persons who use wheelchairs.

6.    At all times mentioned herein New York City Transit Authority (NYCT) and Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA) were public authorities organized under the laws of New York and doing business in the City of New York.

7.    At all times mentioned herein, "John Doe", a bus driver whose true name is not known to Plaintiff, acted as the agent and employee of Defendants NYCT and MaBSTOA.

As a First Cause of Action

8.    On April 3, 2006, Plaintiff's assistant called to make reservations for Plaintiff on SuperShuttle for an accessible wheelchair ride for Friday, April 7, 2006 at 5:00 p.m. and Monday, April 10, 2006 and 2:00 p,m. in New York City, respectively from and to LaGuardia Airport.

9.    The SuperShuttle agent told Plaintiff's assistant that the accessible shuttle was not available at 5:00 p.m. on Friday, and agreed to a 6:00 p.m. pickup at LaGuardia Airport. SuperShuttle took Plaintiff's cell phone number in order to contact her if there were problems.

10.    Plaintiff's plane from Denver to LaGuardia Airport was delayed on April 7, 2006. She got to the pickup location at LaGuardia at 5:52 p.m., and called SuperShuttle to tell them she was there and to find out the time for the pickup. The first person at Supershuttle Plaintiff attempted to speak with  hung up on Plaintiff.

11.    In the course of her dealings with SuperShuttle over the weekend, Plaintiff was hung up on when she telephoned SuperShuttle a total of at least thirteen times, for no better reason than that SuperShuttle personnel had not been adequately trained to interact on the telephone with persons with disabilities affecting their speech, and that these persons therefore did not take the time or make the effort to understand her speech, or to

transfer her call to someone who would do so.

12.    On her second attempt to speak with someone at Supershuttle,  Plaintiff reached an operator who understood the reservation number. Plaintiff was then informed that one of the two SuperShuttle wheelchair accessible vans had broken down that day, so it would be an hour and a half before her ride would get to the airport.

13.    At no time had SuperShuttle attempted to call Plaintiff's cell phone to inform her of the anticipated delay of one and one-half hours in picking her up.

14.    Plaintiff determined that she could get to Manhattan by M-60 public bus more quickly than by waiting for SuperShuttle, and called SuperShuttle to cancel the ride.

15.    At Plaintiff's request, Ms. Laura Hershey called SuperShuttle on Sunday evening, April 9, 2006, to ask about Monday's return ride. Ms. Hershey was told that the ride was scheduled, and that it would be accessible. Ms. Hershey was assured that SuperShuttle had more than one accessible vehicle in service.

16.    On Monday, April 10, 2006 at approximately 7:55 a.m., Plaintiff called both SuperShuttle's toll-free 800 number and its local number, in an attempt to confirm her ride. She made at least five phone calls, on each of which SuperShuttle employees hung up on Plaintiff, that morning.

17.    On what was at least her sixth call to Supershuttle of the morning, Plaintiff was finally transferred to a supervisor, who confirmed all the relevant information. Plaintiff also learned during that call that there was only one accessible van in service, but the supervisor guaranteed her that her pickup would arrive at the designated location on time.

18.    At about 1:00 p.m., Plaintifff called SuperShuttle to again confirm her ride to LaGuardia Airport. She had to place this call at least seven times, because on each of the prior occasions, Supershuttle's telephone operators hung up on her, making a total of at least twelve times that day that Plaintiff had been hung up on by Supershuttle operators as she attempted to confirm her ride.

19.    When she finally reached someone at Supershuttle who took the trouble to understand her, Plantiff  was assured that her ride would meet her at 132 Nassau Street at 2:00 p.m.

20.    At 2:00 p.m., Plaintiff was downstairs at 132 Nassu Street.  Seeing no shuttle, Plaintiff telephoned Super Shuttle, to find out the estimated time of arrival.  When she was finally able to reach a live person, after several minutes, her call was transferred to several other SuperShuttle personnel.  Plaintiff was then informed that the van was unable to get to 132 Nassau Street due  to  blocked streets. Plaintiff told the person on the phone the cross street was Beekman Street and that cars and vans were getting through on that

street. She was asked to go to the corner of Fulton and another street, where the van was.

21.    The SuperShuttle agent continually interrupted Plaintiff, did not listen to her, and did not respond to her attempt to explain that since she did not know her way around the area, she could not locate the van without directions. Instead, he repeated, talking over Plaintiff, that she should go to the location he had mentioned.

22.    At 2:20 p.m., being unable to locate the Supershuttle van, and fearful of missing her flight and being stranded in New York, Plaintiff, Plaintiff proceeded to the bus stop for the Northbound M-15 1st Avenue bus, to connect with the M-60 bus to LaGuardia Airport.

23.    Shortly after she boarded the bus, SuperShuttle called Plaintiff's cell phone and left the message that they wanted to meet her at Nassau and Fulton Streets This was an intersection she could have located had it been offered before she was on a northbound bus, but by this time it would have been impossible to double back to that site, being on a bus heading up First Avenue.

24.    After attempting without success to call SuperShuttle directly, Plaintiff called Ms. Hershey, and relayed the query where on 1st Avenue they wanted to pick Plaintiff up. Ms. Hershey called back, and told Plaintiff that Supershuttle would meet her at 46th Street and First Avenue. Plaintiff had Ms. Hershey call back Supershuttle and confirm that she was on her way to that intersection.

25.    Someone from SuperShuttle called Plaintiff while she was crossing a busy street on her to way to 46th Street. She told the person she could not talk and was on her way to 46th Street., and hung up.

26.    When Plaintiff arrived at 46th Street, the SuperShuttle was nowhere in sight. Plaintiff waited several more minutes at that location, without seeing the SuperShuttle van.

27.    Seeing that she had wasted 30 minutes, and knowing that she would not be able to get the M-60 bus to the airport in time if she did not get back on the bus, Plaintiff traveled to 52nd Street in her wheelchair and got the next northbound M-15.

28.    By this time, the battery on Plaintiff's cell phone, which she was using solely to communicate in an effort to coordinate her ride to LaGuardia Airport, was losing power. It had been almost fully charged that morning.

29.    Plaintiff called Ms. Hershey to inform her she was on the bus and left a message. Ms. Hershey, upon receiving the message, called SuperShuttle, and was told that SuperShuttle would not give Ms. Stephens a ride to the airport.

30.    When Ms. Hershey reached Plaintiff with this news, at 3:39 p.m., Plaintiff informed Ms. Hershey she was back on the bus and would try to get the M-60 bus to get to the

airport on time.

31.    At Plaintiff's request, Ms. Hershey called the airline about later flights, and called back to inform Plaintiff that there were no other flights to Denver that day after 5:00 pm.

32.    Plaintiff was on the bus at 110th Street when the phone rang at 3:44 p.m. and a woman from SuperShuttle asked her where she was. Plaintiff answered that she was at 125th Street and 1st Avenue. The woman asked her to hold on the line but Plaintiff had to tell her that she could not do so, since her cell phone battery was dying, and then hang up.

33.    A few minutes later the woman called back and informed Plaintiff that her ride would be at 125th Street and 1st Avenue. The woman did not tell Plaintiff how long it would be before the van arrived. At no time was Plaintiff given a phone number to call SuperShuttle directly.

34.    After getting to 125th Street in approximately eight minutes, Plaintiff waited at 125th Street and 1st Avenue for an additional 15 minutes,. After attempting to call SuperShuttle without success, she called Ms. Hershey and told her that SuperShuttle had called her and told Plaintiff they would be there. She asked Ms. Hershey to call SuperShuttle and find out when they would be there. Plaintiff informed Ms. Hershey she was going to 125th and 2nd Avenues, and would get on the next M-60.

35.    Plaintiff attempted to travel on the sidewalk to 2nd Avenue, but could not mount the curb in her wheelchair, and had to go back to 1st Avenue, and traveled on the street to 2nd Avenue, taking her life in her hands, where she waited there for the next M-60 bus.

36.    As the M-60 was getting to 125th and 2nd at 4:13 p.m., Ms. Hershey called Plaintiff and informed her SuperShuttle would be at 125th Street and 1st Avenue in 7 to 10 minutes. Plaintiff crossed back over 2nd and traveled on 125th Street to 1st Avenue.

37.    SuperShuttle arrived at or around 4:25 p.m. After Plaintiff had entered and been secured in the van, it left 125th Street and 1st Avenue at approximately 4:30 p.m.

38.    The driver called into dispatch to inform them of his pick-up. The dispatch person, speaking over the speaker phone audibly about Plaintiff, as if Plaintiff were not present, said something to the effect that the dispatcher " was the only person who could understand her" and "you have earned your wings today." The driver responded with "yes, someday I will reap the rewards."

39.    En route, Plaintiff called United Air Lines to check the status of her flight, and learned that it was on time.

40.    Upon arriving at the airport, Plaintiff was not able to use self check-in to save time because it was less than 30 minutes from the departure time. She enlisted the help of

United Air Line employees, one of whom ran with Plaintiff to security, where she was hand-screened, and through the airport to the door at 5:00 p.m. just as the airline was shutting the gate.

41.     The plane was delayed 15 minutes in taking off due to Plaintiff's lateness.

42.     Plaintiff, who had not had lunch because she had expected to eat at the airport in New York,  did not eat until she got to home at 10:30 P. M. EST (8:30 MST).

43.     Because of her lateness, caused by SUPERSHUTTLE, Plaintiff was unable to get her reading glasses before boarding the flight.

44.     Plaintiff's cell phone battery died when she got to Denver. She barely had an opportunity to speak with Ms. Hershey after trying several times and having the phone battery die.

45.     Defendants Supershuttle, Inc. and Supershuttle International, Inc. had, at most, only, two wheelchair accessible vans for the use of persons with disabilities, going two and from New York airports, while maintaining a fleet of non-accessible vehicles.

46.     Defendants Supershuttle, Inc. and Supershuttle, International, Inc., knew or should have known that this was not an adequate  number of accessible vehicles to provide an equivalent level of services as they provided to their other customers to persons who needed accessible vans, and that their services would be totally inadequate whenever one of the two vans was out of service.

47.     Iin failing to make arrangements to have accessible van service available within a  reasonable time for travel between area airports and  Manhattan,  Defendants SuperShuttle, Inc. and Supershuttle, International, Inc., failed to provide equal access to its facilities and services for persons with disabilities.

48.     Plaintiff has occasion to travel to New York by air, and but for Defendants' discriminatory failure to provide reasonable access, would have occasion to utilize their ground transport service to Manhattan.

49.     In failing to train their employees to interact courteously on the telephone with persons with disabilities which impair their ability to make themselves understood on the telephone, and in failing to maintain alternative telephone connections, eg., TTY telephones, Defendants SuperShuttle, Inc. and Supershuttle, International, Inc., failed to provide equal access to their facilities and services for persons with disabilities, causing Plaintiff injury.

50.     As a result of the discriminatory treatment by Defendants, Plaintiff suffered anxiety, distress, humiliation, emotional and physical pain and suffering.

51.   Although Plaintiff continues to travel to New York City by air periodically, she has been compelled to rely upon public transportation to and from airports rather than risking a repetition of the discriminatory experience with Supershuttle which almost caused her to be stranded, missing her flight, and inflicted enormous emotional distress upon her.

52.   Defendants' actions and failures to act violated Title II-B of the Americans with Disabilities Act, 42 U.S.C. § 12141 et seq., and Title III, 42 U.S. C. § 12181 et seq.

### As a Second Cause of Action

53.   Plaintiff repeats as if stated here in full ¶¶ 1-52 of this Complaint.

54.   Congress, in enacting the Americans with Disabilities Act, directed that the Secretary of Transportation promulgate regulations to implement the transportation provisions of the Act.

55.   Pursuant to that authority, the Secretary of Transportation adopted regulations, found at 49 CFR § 37.173, requiring that providers of public transportation ensure that their personnel are trained to proficiency to properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.

56.   Defendants Defendants SuperShuttle, Inc. and Supershuttle, International, Inc., failed to train their employees to proficiency in assisting persons with disabilities, causing Plaintiff injury.

### As a Third Cause of Action

57.   Plaintiff repeats as if stated here in full ¶¶ 1-56 of this Complaint.

58.   The discriminatory acts of Defendants Supershuttle, Inc. and Supershuttle International, Inc. violated the New York State Human Rights Law, Executive Law §§ 290 et seq., causing Plaintiff injury

### As a Fourth Cause of Action

59.   Plaintiff repeats as if stated here in full ¶¶ 1-58 of this Complaint.

60.   The discriminatory acts of Defendants Supershuttle, Inc. and Supershuttle International, Inc. violated the New York City Human Rights, New York City Administrative Code, §§ 8-101 et seq., causing Plaintiff injury.

### As a Fifth Cause of Action

61.    Plaintiff repeats as if stated here in full ¶¶ 1-60 of this Complaint.

62.    Defendants Supershuttle, Inc. and Supershuttle,International Inc., on the Supershuttle website and elsewhere, held out the services of Supershuttle, Inc. in as providing equal, accessible service to persons with disabilities, and in particular persons using wheelchairs.

63.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc., advertised on the SuperShuttle website that "Supershuttle is committed to providing exceptional guest service for our customers with disabilities, including those who use wheelchairs."

64.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc., advertised on the SuperShuttle website that "SuperShuttle does not discriminate against individuals with disabilities in the provision of its services."

65.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc., advertised on the SuperShuttle website that "Customers requiring the use of accessible transportation are also encouraged, but not required, to make reservations for outbound trips at least 24 hours in advance and to specify the need for accessible transportation. As to such reservations and except for certain outlying areas, SuperShuttle will use its best efforts to fulfill such reservations within 30 minutes of the requested pick-up time. "

66.    Upon information and belief, Defendants Supershuttle, Inc. and Supershuttle, International, Inc. had purchased the two accessible vans that were in use in New York no later than October, 2002, and had maintained records of the periods when each of these accessible vans was not in operable condition.

67.    Upon information and belief, Defendants Supershuttle, Inc. and Supershuttle, International, Inc. had kept records from 2002 forward of the complaints they received from persons with disabilities who were denied equal service.

68.    Based upon the information collected in their logs and records, Defendants Supershuttle, Inc. and Supershuttle, International, Inc. must have known or been recklessly indifferent to the fact that they could not provide, or make "best efforts" to provide, accessible van service within thirty minutes of requested time to persons with disabilities requiring accessible van service, with only two accessible vans.

69.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc. knew that the promised level of service, best efforts to provide accessible service within thirty minutes of the requested time, with the exception of some outlying areas, was facially not equal to and therefore discriminatory in comparison with its promise of best efforts to provide service within fifteen minutes of requested time, to persons who did not require wheelchair-accessible service.

70.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc. willfully misrepresented the services that they were prepared to provide to persons with disabilities in their website advertising, and elsewhere, in violation of General Business Law § 349.

71.    Plaintiff was injured by her reliance on the misrepresentations of Defendants Supershuttle, Inc. and Supershuttle, International, Inc.

As a Sixth Cause of Action

72.    Plaintiff repeats as if stated here in full ¶¶ 1-71 of this Complaint.

73.    Defendants Supershuttle, Inc. and Supershuttle, International, Inc. subjected Plaintiff to a series of indignities which were proximately caused by these defendants' intentional reckless conduct in disregard of Plaintiff's well-being, after undertaking to provide her with a service.

74.    Defendants' actions and failure to act constituted intentional infliction of emotional distress, causing Plaintiff injury.

As a Seventh Cause of Action

75.    Plaintiff repeats as if stated here in full ¶¶ 1-7 of this Complaint.

76.    On Sunday, April 9, 2006 at or about 5:00 p.m. Plaintiff boarded the M-15 First Avenue bus operated by Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority in her wheelchair, at the Confucius Plaza stop in lower Manhattan.

77.    The driver operating the bus, Defendant "John Doe," whose true name is unknown to Plaintiff, demanded that she turn off her power wheelchair.

78.    Plaintiff asked "why?"

79.    The driver, without giving any explanation or otherwise responding to Plaintiff's question, repeated his demand that she turn off the power on her wheelchair.

80.    Plaintiff did not turn off the power on her wheelchair, and repeated her request for an explanation, which was not forthcoming from the driver.

81.    After several minutes of waiting, the driver announced to the other passengers on the bus that they would have to take the next bus, because Plaintiff was not turning off her wheelchair, and had the passengers leave the bus.

82.    Plaintiff waited for over almost forty minutes on the bus, until a supervisor arrived at the scene.

83.    At no time during the half-hour she was waiting while the bus was standing still did the bus operator offer to secure Plaintiff's wheelchair with the straps the bus was equipped with for that purpose.

84.    Had Plaintiff turned off her wheelchair without the chair secured, the movement of the bus would have caused her to be thrown about on the bus.

85.    When the supervisor arrived, he relieved the driver, told Plaintiff she would not have to turn off her chair, asked if he could secure Plaintiff's chair, which she gave him permission to do, and after securing the chair, drove the bus directly to Plaintiff's destination.

86.    The acts and failure to act of Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority, by their agent and employee, "John Doe" deprived Plaintiff of equal access to public transportation in violation of Title II of the Americans with Disabilities Act, 42 U.S. C. § 12131, et seq., Title II-B, 42 U.S.C. § 12141 et seq., and Title III, 42 U.S. C. § 12181 et seq.

As an Eighth Cause of Action

87.    Plaintiff repeats as if stated here in full ¶¶ 1-7 , 54-55 and 76-86 of this Complaint.

88.    "John Doe"'s discriminatory treatment of Plaintiff was proximately caused and contributed to by the failure of Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority to train their personnel to proficiency to properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities, causing Plaintiff to be discriminated against and to be emotionally injured.

As a Ninth Cause of Action

89.    Plaintiff repeats as if stated here in full ¶¶ 1-7 , 54-55 and 76-86 of this Complaint.

90.    Upon information and belief, at all times mentioned herein, Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority have been recipients of federal funds.

91.    These Defendants acts and failure to act, causing Plaintiff to be discriminated against, violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.

## As Tenth Cause of Action

92.    Plaintiff repeats as if stated here in full ¶¶ 1-7 , 54-55  and 76-86 of this Complaint.

93.    The acts and failure to act of Defendants  New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority caused Plaintiff to suffer discriminatory treatment within the meaning of the New York State Human Rights Law, Executive Law § 290 et seq.

94.    Defendant "John Doe" aided and abetted discriminatory treatment by Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority, in violation of the New York State Human Rights Law .

## As an Eleventh Cause of Action

95.    Plaintiff repeats as if stated here in full ¶¶ 1-7 , 54-55  and 76-86 of this Complaint.

96.    The acts and failure to act of Defendants  New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority caused Plaintiff to suffer discriminatory treatment within the meaning of the New York City Human Rights Code, Administrative Code § 8-101 et seq.

97.    Defendant "John Doe" aided and abetted discriminatory treatment by Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority, in violation of the New York City Human Rights Code.

## As a Twelfth Cause of Action

98.    Plaintiff repeats as if stated here in full ¶¶ 1-7 and 76-86 of this Complaint.

99.    The acts of Defendant "John Doe", acting within the scope of his employment by Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority subjected Plaintiff to the intentional infliction of emotional distress, causing her injury.

100.    A timely notices of claim were served on Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority.

101.    Defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority have not adjusted Plaintiff's claim.

Wherefore, Plaintiff requests that this Court grant a judgment against each of the Defendants for monetary relief in an amount to be determined by the finder of fact, but in excess of the jurisdictional limit of any lower state court, together with exemplary damages

on her causes of action and against those parties against whom exemplary damages are permitted, including trebled damages for wilful violation of § 349 the General Business Law, injunctive relief preventing Defendants from discriminating against Plaintiff and requiring them to take measures including training of their employees to insure against such discriminatory practices, together with reasonable attorneys' fees and the costs and disbursements of this action.

Yours, etc.

Aaron David Frishberg
Attorney for Plaintiff
116 W. 111th Street
New York, NY 10026
212 740 4544

# *STIPULATION*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

ROBIN STEPHENS,

                                        Plaintiff,                    Index #104791/2007

                                                                     STIPULATION

          -against-

SUPER SHUTTLE, INC., SUPERSHUTTLE
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY,
MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY and
"JOHN DOE," NYCT BUS DRIVER

                                        Defendants.

------------------------------------------------------------x

IT IS HEREBY STIPULATED AND AGREED by the attorneys on behalf of Plaintiff and

Defendants New York City Transit Authority and Manhattan and Bronx Surface Operating

Authority in the above-captioned matter as follows:

          The time for Defendants New York City Transit Authority and Manhattan and Bronx

Surface Operating Authority to respond to Plaintiff's Complaint is hereby extended from June

14, 2007 to July 16, 2007.

Dated:          June 4, 2007
                Brooklyn, N.Y. 11201

Aaron David Frishberg                          MARTIN B. SCHNABEL
116 W. 111th Street                            Vice President and General Counsel
New York, NY 10026                             130 Livingston Street, Room 1233
(212) 740-4544                                 Brooklyn, N.Y. 11201
(212) 222-2680 (Fax)                           (718) 694-3889
                                               (718) 694-4020 (Fax)

By: _____          By: _____
    Aaron David Frishberg, Esq. (AF 6139)      Ann Burton Goetcheus (AG 7265)