UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ROBIN STEPHENS,

                **Plaintiff,**

    -against-

SUPER SHUTTLE, INC., SUPER SHUTTLE
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY, MANHATTAN AND
BRONX SURFACE TRANSIT OPERATING
AUTHORITY and "JOHN DOE," NYCT BUS
DRIVER,

                **Defendants.**

------------------------------------------------------------X

DECLARATION OF ANN
BURTON GOETCHEUS IN
SUPPORT OF TRANSIT
DEFENDANTS' MOTIONS TO
DISMISS AND/OR SEVER

CV-07-5614 (MARRERO, J.)

      **ANN BURTON GOETCHEUS**, pursuant to 28 U.S.C. § 1746, declares:

    1.    I am an attorney who represents the Transit Defendants in this action. I submit this declaration in support of the Transit Defendants' motions in the alternative, under Fed. Rules Civ. P. 21 and 12(b) (6), first, to dismiss the Seventh through Twelfth Causes of Action in the Amended Complaint for failure to state a claim of disability discrimination under the Americans with Disabilities Act or the New York State and New York City Human Rights Laws (respectively the "NYS HRL" and the "NYC HRL"), second, to dismiss the Eleventh Cause of Action because, pursuant to the New York Public Authorities Law § 1288(8), the New York City HRL is not applicable to the Transit Defendants; third, to dismiss the Twelfth Cause of Action because Plaintiff has not complied with the requirements of the Public Authorities Law § 1212(5), as she failed to provide accurate information concerning her claim in her sworn Notice of Claim and failed to appear for a statutory hearing scheduled by the Transit Defendants, prerequisites

to suit; fourth, to dismiss claims for punitive damages because, under 42 U.S.C. 1981a(b)(1) and New York State Executive Law § 297(9), punitive damages cannot be assessed against a public authority such as the Transit Defendants; and finally, in further alternative, the Transit Defendants move under Fed R. Civ. P. 21 to sever any of the Causes of Action Seventh through Twelfth raised against them that survive the preceding motions to dismiss from Causes of Action First through Sixth raised against Shuttle Associates, L.L.C. and Supershuttle International, Inc. (hereinafter "the Super Shuttle Defendants) for the reasons stated in Transit Defendants' Memorandum of Law.

    2.    A copy of the Amended Complaint, dated June 20, 2007, is annexed hereto as Exhibit A.

    3.    A copy of the sworn Notice of Claim filed by Plaintiff on or about June 22, 2006 against the Transit Defendants, as referenced in the Amended Complaint ¶ 100, is annexed hereto as Exhibit B. It should be noted that Plaintiff stated in her sworn Notice of Claim that the alleged incident occurred on Saturday, April 8, 2006 at 6:00 pm at Chatham Square on an M-15 bus, while in her Amended Complaint the incident is described as occurring on Sunday, April 9, 2006 at 5:00 pm at Confucius Plaza on an M-15 bus.

    4.    A copy of the notice of statutory hearing dated June 27, 2006 directed to Plaintiff's counsel by the Transit Defendants is annexed hereto as Exhibit C. Upon information and belief, Plaintiff failed to appear for the scheduled hearing and did not request an adjournment.

    5.    A transcript of the Transit Defendants' Department of Buses' Command Center contemporaneous recordings relating to the incident described in the Seventh

#990049
2007-9948

through Twelfth Causes of Action is attached as Exh. D. hereto. The declarant prepared the transcript with the assistance of Dispatchers Ely and Agro and Bus Operator Gregory whose communications were recorded.

6. A Declaration by MaBSTOA Surface Line Dispatcher Dennis Ely dated July 24, 2007 is appended as Exhibit E. On information and belief, Dispatcher Ely is the supervisor referenced in the Amended Complaint ¶ 85.

7. Pertinent portions of copies of power wheelchair manuals located through Google are attached as Exhibits F-K. These manuals are provided as third-party evidence that a request to power off a power wheelchair on a bus does not constitute a prima facie example of disability discrimination. Specifically, we call the Court's attention to the following:

> a. Exh. F - "SHOPRIDER MEDICAL POWER WHEELCHAIR" User Manual, the Owner's Manual for SHOPRIDER products WIZZ 888WNL, STREAMER 888WB, STREAMER 888WAB, STREAMER 888WSB, JETSTREAM-M 888WAM, and JETSTREAM-L 888WAL. *See* pages 5 and 6, warning that power wheelchairs may be susceptible to electromagnetic interference (EMI) from radio wave sources including among other electronic devices, a cell phone and transmitter radios. The EMI can cause a power wheelchair to release its brakes and move by itself. Avoid going near these EMI sources and turn off sources, such as a cell phone, that may be carried by the power wheelchair driver.

b. Exh. G - "Go Chair" Owner's Manual. Go Chair is a Power Wheelchair is a Pride Mobility Products Corp. product. *See* page 10, under "Braking Information" that states, "2. Disc Park Brake—activates mechanically after regenerative braking slows the vehicle to near stop, or when power is removed from the system for any reason."

On Page 14, the manual provides, "WARNING! If you anticipate being seated in a stationary position for an extended period of time, turn off the power. This will prevent unexpected motion from inadvertent joystick contact. This will also eliminate the possibility of unintended chair movement from electromagnetic (EM) sources. Failure to do so may result in personal injury."

c. Exh. H - "Jazzy Select 14" Owner's Manual. Jazzy Select 14 is a Pride Mobility Products Corp. product. *See* Page 10 under "Braking Information," the manual states, "2. Disc Park Brake—activates mechanically after regenerative braking slows the vehicle to near stop, or when power is removed from the system for any reason." On Page 14, the manual provides, "WARNING! If you anticipate being seated in a stationary position for an extended period of time, turn off the power. This will prevent unexpected motion from inadvertent joystick contact. This will also eliminate the possibility of unintended chair movement from electromagnetic (EM) sources. Failure to do so may result in personal injury."

     d.    Exh. I - "BetaTrac" Owner's Manual. BetaTrac is a TEFTEC Corporation product. *See* page 6, a warning which reads, "WARNING: When using a wheelchair lift, turn the wheelchair power switch OFF." On Page 7 of the manual, there is a warning which reads, "WARNING: As a safety feature, this wheelchair is equipped with fail-safe electromechanical park brake. Any interruption in the power supply will cause this brake to immediately engage and stop the wheelchair."

     e.    Exh. J - "Alanté Jr." Owner's Manual. Alanté Jr. is a Golden technologies product. *See* page 10 of the manual, under "EMI / RFI RECOMMENDATIONS" the manual states "Turn off the power if your *Alanté Jr.* is going to be in a stationary position for any length of time."

     f.    Exh. K - "Cirrus Plus" Owner's Manual & Instructions. Cirrus Plus is a Dr.K Medical Products Inc. product. *See* page 11, under the heading "Safe Driving" stating, "2. Always turn the chair off and engage the wheel locks when transferring or while the chair is stationary for long periods."

8.    In light of an amendment to New York Public Authorities Law § 1266(8) effective May 15, 2000, which amendment added the Transit Authority to the group of entities exempted by that section from the reach of legislation affecting the activities or operations of those entities, my office – I am employed in the Office of the General Counsel of the Transit Authority – began informing the New York City Commission on

Human Rights that that amendment deprived that Commission of jurisdiction to enforce the Administrative Code of the City of New York against the Transit Authority. The City Commission appears to have agreed and has issued numerous Notices of Administrative Closure in which the City Commission announced that, because of that amendment, it lacked jurisdiction to enforce the Administrative Code against the Transit Authority.

9. Copies of the non-published Notices of Administrative Closure from the N.Y.C. Commission on Human Rights that are referenced in the Memorandum of Law, *Pinkston v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AR-01-1010596-E (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Aronica v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AD-01-1010481-D (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Gethers v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-D-01-1010120-D (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Lambey v. MTA New York City Transit Auth.*, Cmplt. No. M-E-LR-01-1011050-E (March 7, 2002), are attached as Exhibit L hereto.

Executed at Brooklyn, New York, this 13th day of August, 2007, subject to the penalties of perjury.

*Ann Burton Goetcheus*
Ann Burton Goetcheus