UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ROBIN STEPHENS,

                               Plaintiff,

             -against-

SUPER SHUTTLE, INC., SUPER SHUTTLE         CV-07-5614 (MARRERO, J.)
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY, MANHATTAN AND
BRONX SURFACE TRANSIT OPERATING
AUTHORITY and "JOHN DOE," NYCT BUS
DRIVER,

                         Defendants.

------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF TRANSIT DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN WHOLE OR IN PART AND/OR TO SEVER CLAIMS AGAINST THE TRANSIT DEFENDANTS FROM THOSE AGAINST THE SUPERSHUTTLE DEFENDANTS


**MARTIN B. SCHNABEL**
Vice President and General Counsel
New York City Transit Authority
130 Livingston Street, 12th Floor
Brooklyn, New York 11201
(718) 694-3889


Of Counsel:
Ann Burton Goetcheus
Executive Agency Counsel
Joshua Jacobs, Law Clerk

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS............................................................................................1

ARGUMENT................................................................................................................4

POINT ONE

    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
    AGAINST THE TRANSIT DEFENDANTS BECAUSE THE
    CONDUCT SHE ALLEGES BY THE TRANSIT
    DEFENDANTS DOES NOT STATE A PRIMA FACIE CASE
    OF DISABILITY DISCRIMINATION ...............................................................4

    A.    Dismissal Is Appropriate Because The Plaintiff
        Fails To Raise A Claim Upon Which Relief May
        Be Granted...........................................................................................4

    B.    Plaintiff's Claim Should Be Dismissed Because
        The Basis Of Her Claim, The Bus Operator's
        Request That She Power Off Her Wheelchair, Is
        Not A Basis For Relief Under The ADA. ............................................5

POINT TWO

    THE TWELFTH CAUSE OF ACTION SHOULD BE
    DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY
    WITH THE NOTICE OF CLAIM REQUIREMENTS OF
    THE PUBLIC AUTHORITIES LAW THAT ARE
    PREREQUISITE TO FILING SUIT.................................................................8

    A.    The Pleading Requirement Of the Public
        Authorities Law Has Not Been Met. .......................................................8

POINT THREE

    NO RELIEF CAN BE GRANTED FOR THE PLAINTIFF'S
    CLAIM OF DISCRIMINATION PURSUANT TO THE NEW
    YORK CITY HUMAN RIGHTS LAW BECAUSE THE
    TRANSIT DEFENDANTS ARE EXEMPT FROM
    LIABILITY UNDER THE STATUTE..............................................................10

**Page**

    A.    A Recent State Court Decision And The Human Rights Commission Itself State That The Transit Defendants Are Exempt From The City's Human Rights Law................................10

    B.    This Court Should Follow The *Tang* Court's Persuasive Interpretation Of State Law And Find The Transit Defendants Exempt From The NYCHRL. ..............................13

**POINT FOUR**

    PUNITIVE    DAMAGES    ARE    NOT    AVAILABLE AGAINST THE TRANSIT DEFENDANTS...................................13

**POINT FIVE**

    PLAINTIFF'S    CLAIMS    AGAINST    THE    TRANSIT DEFENDANTS    SHOULD    BE    SEVERED    FROM    THE CLAIMS AGAINST THE SUPER SHUTTLE DEFENDANTS......................14

    A.    Severance Should Be Granted Because There Is No Relationship Between the Claims Against The Transit Defendants And Those Against The Super Shuttle Defendants. ..............................14

        1.    The Claims Brought Against The Transit Defendants And The Super Shuttle Defendants Arise Out Of Different Occurrences. ..............................15

        2.    The Lack Of Common Facts Or Laws Weighs In Favor Of Severance..............................16

        3.    Judicial    Economy    Weighs    In    Favor    Of Severance. ..............................17

        4.    Continued Consolidation is Prejudicial to All Defendants. ..............................18

        5.    Different Witnesses And Documentary Proof Weigh In Favor Of Severance..............................18

    B.    Severance Should Be Granted Because All Factors Weigh In Favor Of Severance..............................18

**CONCLUSION** ..............................19

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                <u>**Pages**</u>

**Federal Cases**

<u>Barr v. New York City Transit Authority,</u>
    2002 U.S. Dist. LEXIS 2968 (E.D.N.Y. Feb. 20, 2002)......................................14

<u>Bowles v. New York City Transit Auth.,</u>
    2006 U.S. Dist. LEXIS 32914, 25 .....................................................................14

<u>Cashman v. Montefiore Medical Ctr.,</u>
    1996 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 25, 1996)................................15, 18

<u>Cestone v. General Cigar Holdings, Inc.,</u>
    2002 U.S. Dist. WL 424654 (S.D.N.Y. March 18, 2002).................................15

<u>Dorsett v. S.E. Pa. Transport Authority,</u>
    2005 U.S. Dist. LEXIS 18351 (E.D. Pa. Aug, 29, 2005)...............................6, 7

<u>EEOC v. Staten Island Sav. Bank,</u>
    207 F.3d 144 (2d Cir. 2000)...............................................................................5

<u>Everson v. New York City Transit Authority,</u>
    216 F. Supp. 2d 71 (E.D.N.Y. 2002) ...............................................................11

<u>Ferguson v. City of Phoenix,</u>
    157 F.3d 668 (9th Cir. 1998) ..............................................................................5

<u>Green v. City of New York,</u>
    465 F.3d 65 (2nd Cir. 2006)..............................................................................16

<u>Harris v. City of New York,</u>
    186 F.3d 243 (2d Cir. 1999)...............................................................................4

<u>Kirk v. Metropolitan Transport Authority,</u>
    2001 U.S. Dist. WL 25703 (S.D.N.Y. Jan. 10, 2001)......................................15

<u>Lewis v. Triborough Bridge and Tunnel Authority,</u>
    2000 U.S. Dist. WL 423517 (S.D.N.Y. Apr. 19, 2000)....................................15

<u>Midgett v. Tri-County Metropolitan Transport District of Or.,</u>
    254 F.3d 846 (9th Cir. 2001) ..............................................................................5

<u>Morris v. Northrup Grumman Corp.,</u>
    37 F. Supp. 2d 556 (E.D.N.Y. 1999) ..........................................................15, 18

**Cases**                                                                    **Pages**

Muhammad v. New York City Transit Authority,
    450 F. Supp. 2d 198 (E.D.N.Y. 2006) ..................................................................11

New York v. Hendrickson Brothers, Inc.,
    840 F.2d 1065 (2d Cir. 1988)
    cert. denied, Hendrickson Bros., Inc. v. New York, 488 U.S. 848 (1988) .......................15

Reeves v. Johnson Controls World Services,
    140 F.3d 144 (2nd Cir. 1998)..................................................................................13

Rose v. The Long Island R.R. Pension Plan,
    828 F.2d 910 (2d Cir. 1987), cert. denied, 485 U.S. 936 (1988) .......................................11

Sidari v. Orleans County,
    174 F.R.D. 275 (W.D.N.Y. 1996)..........................................................................16

Stewart v. New York City Transit Authority,
    2006 U.S. Dist. LEXIS 4279 (S.D.N.Y. Feb. 6, 2006).................................................5

Tardd v. Brookhaven National Laboratories,
    2007 U.S. Dist. WL 1423642 (E.D.N.Y. May 8, 2007) .............................................16

West v. American Telegraph & Telegraph Co.,
    311 U.S. 223 (1940)..........................................................................................13

Weir v. Litton Bionetics, Inc.,
    1986 WL 11608 (D. Md. May 29, 1986)..................................................................16

Williams v. Hernandez,
    2003 U.S. Dist. WL 21664815 (S.D.N.Y. July 15, 2003) ...........................................17

**State Cases**

Canelos v. City of New York,
    37 A.D. 3d 637 (2d Dep't 2007) .......................................................................8, 9

D'Alessandro v. New York City Transit Authority,
    83 N.Y.2d 891 (1994) ........................................................................................9

Gaines v. N.Y.S. Division of Housing,
    90 N.Y.2d 545 (1997) ......................................................................................12

Karoon v. New York City Transit Authority,
    241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dept. 1997)..............................................14

**Cases**                                                                      **Pages**

Kim L. v. Port Jerris Schl. Dist.,
    40 AD 3d 1042 (2d Dep't 2007) .................................................................8, 9

Krohn v. New York City Police Department,
    2 N.Y.3d 329, 778 N.Y.S.2d 746 (2004) ..........................................14

Levy v. City Commission on Human Rights,
    85 N.Y.2d 740 (1995) ................................................................11, 12

Stauber v. New York City Transit Auth.,
    10 A.D.3d 280, 282 (1st Dep't 2004) ..................................................5

Tang v. New York City Transit Authority,
    2007 N.Y. Misc. LEXIS 4402
    (Kings County Sup. Ct., May 22, 2007) ..........................10, 11, 12, 13

Thoreson v. Penthouse International,
    80 N.Y.2d 490, 591 N.Y.S.2d 978 (1992) ..........................................14

**Unpublished Decisions**

Aronica v. N.Y.C. Transit Authority,
    Cmplt. No. M-E-AD-01-1010481-D (March 7, 2002) ..........................12

Blitzer v. N.Y.C. Transit Authority,
    Cmplt. No. M-E-DS-00-1009264-E (July 31, 2002) ..........................12

Gethers v. N.Y.C. Transit Authority,
    Cmplt. No. M-E-D-01-1010120-D (March 7, 2002) ..........................12

Lambey v. MTA New York City Transit Authority,
    Cmplt. No. M-E-LR-01-1011050-E (March 7, 2002) ..........................12

Pinkston v. N.Y.C. Transit Authority,
    Cmplt. No. M-E-AR-01-1010596-E (March 7, 2002) ..........................12

**Federal Statutes**

Fed. R. Civ. P. 12 ......................................................................1, 4

Fed. R. Civ. P. 21 ....................................................................1, 14-19

29 U.S.C. § 794 ..............................................................................17

**Cases**                                                              **Pages**

42 U.S.C. 1981a(b)(1)...............................................................................1, 13

42 U.S.C. § 12131.......................................................................................5

42 U.S.C. § 12184(a) ................................................................................16

**State and City Statutes**

N.Y. General Municipal Law § 50.............................................................8, 9

N.Y. Pub. Auth. Law § 1212(4).....................................................................9

N.Y. Pub. Auth. Law § 1266 (8)............................................................ 10-12

Admin Code of the City of New York § 8-101 ...........................................10

## PRELIMINARY STATEMENT

The New York City Transit Authority and the Manhattan and Bronx Surface Transit Operating Authority (hereinafter "the Transit Defendants") move to dismiss the Seventh through Twelfth Causes of Action of the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Plaintiff has failed to state a claim upon which relief may be granted, having failed to state a prima facie case of disability discrimination in her Amended Complaint. Second, in the alternative, the Transit Defendants move to dismiss the Eleventh Cause of Action as the New York City Human Rights Law (hereinafter "NYCHRL") is inapplicable to the Transit Authority. Third, the Transit Defendants also move in the alternative to dismiss the Twelfth Cause of Action on the basis that the Plaintiff has not complied with the requirements of the Public Authorities Law § 1212(5), as she failed to provide accurate information concerning her claim in the Notice of Claim and failed to appear for a statutory hearing scheduled by the Transit Defendants. Fourth, the Transit Defendants move in the alternative to dismiss the claims against them for punitive damages because, under 42 U.S.C. 1981a(b)(1) and New York State Executive Law § 297(9), punitive damages cannot be assessed against a public authority such as the Transit Defendants. Finally, in further alternative, the Transit Defendants move under Fed. R. Civ. P. 21 to sever any of the Causes of Action Seventh through Twelfth raised against them that survive their motions to dismiss from Causes of Action First through Sixth raised against Shuttle Associates, L.L.C. and Supershuttle International, Inc. (hereinafter "the Super Shuttle Defendants).

## STATEMENT OF FACTS

The Transit Defendants, NYCTA and MaBSTOA, while accepting the facts pled against them in the Amended Complaint in the Seventh through Twelfth Causes of Action as required on

a motion to dismiss, do so solely for the purposes of this motion, disputing, in particular, the time, bus line, and location of the event alleged in that portion of the Amended Complaint.[1] The Transit Defendants move to dismiss all claims against them because, even accepting the pleadings as true, the actions in the Amended Complaint fail to state a prima facie case of discrimination on the basis of disability against the Transit Defendants, representing instead an incident in which the Transit Defendants' employees, in the interest of safety, requested that Plaintiff turn off her power wheelchair while riding on their bus and after a delay of no more than thirty minutes, secured her wheelchair and took her to her destination even though Plaintiff failed to comply with their request to turn off her power wheelchair. [2]

On Sunday, April 9, 2006, at around 6:30 pm, the Plaintiff, Robin Stephens, boarded a northbound bus operated by Transit Defendants in lower Manhattan.[3] Goetcheus Declaration Exh. D, NYCTA Department of Buses Command Center ("Command Center") Transcript. The Bus Operator asked Plaintiff to turn off her power wheelchair so that her wheelchair could be secured. The Plaintiff refused, apparently failing to understand that the Bus Operator would secure her wheelchair once she powered off the machine. (Exhibit A, ¶ 78). Plaintiff alleges that the Bus Operator did not tell her why she had to turn off the wheelchair. (Exh. A, ¶ 79). The

---

[1]     The Amended Complaint in this action is attached as Exh. A to the Goetcheus Declaration provided herewith.  All referenced exhibits are attached to the Goetcheus Declaration.

[2]     Because Transit Defendants have presented documents outside the pleadings with this motion as Exhibits attached to the Goetcheus Declaration, including the transcript of the contemporaneous Department of Buses Command Center recordings counsel prepared in consultation with the personnel involved attached as Exh. D, a Declaration from the road dispatcher, Dennis Ely, who responded to the incident as Exh. E and relevant portions of several publicly available power wheelchair manuals concerning the advisability of powering off and the effect of powering off such a device, attached as Exh. F-K, we request the Court to treat this as a motion under Rule 56 of the Federal Rules of Civil Procedure.  In addition, in support of the legal argument concerning the inapplicability of the NYC HRL to the Transit Defendants, we have attached unpublished decisions of the NYC Commission on Human Rights dismissing charges filed with it for this reason as Exh. L.

[3]     The Amended Complaint asserts that this event took place at Confucius Square on *Sunday*, April 9, 2006 at or about **5:00 p.m.** on an M-15 bus. (Exhibit A, Amended Complaint, paragraph 76).  The Notice of Claim asserted that this event took place at Chatham Square on *Saturday*, April 8, 2006 at about **6:00 p.m.** on an M-15 bus. Based on Transit Defendants' Department of Buses Command Center Recordings and discussion with Dispatcher Dennis Ely who reported to the scene, we believe the events in fact took place on Park Row near Police Plaza on Sunday, April 9, 2006 at about 6:30 p.m. on an M-103 bus.

2

Bus Operator called the Transit Defendants' Department of Buses Command Center (hereinafter "Command Center") for instruction. *See* Exh. D, Command Center Transcript.

Plaintiff alleges that she refused to turn off her wheelchair because, in her experience, had she done so, without the wheelchair strapped in place, nothing would have prevented the movement of the bus from throwing her "about on the bus." *See* Exh. A, ¶ 84. After several minutes, the bus driver off-loaded the rest of the passengers on the bus when the following bus pulled up. *See* Exh. B, Plaintiff's Sworn Notice of Claim. The Bus Operator kept the bus stationary and waited until a supervisor arrived and the Plaintiff's wheelchair was secured in place. *See* Exh. A, ¶¶ 81-85.

The Control Center responded to the problem by dispatching a road supervisor to assist in resolving the situation. *See* Exh. D. The Department of Buses personnel agreed with the Bus Operator's belief (and numerous manuals for power wheelchairs also indicate) that it is desirable that a power wheelchair be turned off in the interest of safety prior to the Bus Operator's securing the wheelchair because if Plaintiff or the Bus Operator or another passenger were to brush against the control which operates the wheelchair, the chair could move unexpectedly. *See* Exh. D, Exhs. F-K, including Exh. K, p. 10, where it is noted that only a "light touch" is required to drive the power chair.

Although Transit Defendants and Plaintiff disagree concerning some of the details, there is no dispute that a supervisor boarded the bus, assisted in securing Plaintiff's wheelchair and that Plaintiff was driven to her destination. (Exh. A, ¶ 85). The sole damage suffered by Plaintiff was a delay of approximately 30 minutes, occasioned by, at worst, a misunderstanding between the bus operator and Plaintiff concerning the Bus Operator's request that Plaintiff power off her wheelchair.

#990443
2007-9948

The First through Sixth Causes of Action are alleged exclusively against the Super

Shuttle Defendants and are based on events wholly unrelated to the event referenced in the

Seventh through Twelfth Causes of Action.  In the First through Sixth Causes of Action, the

Plaintiff asserts that the Super Shuttle Defendants hung up the phone on her when she called to

confirm her transportation arrangements between LaGuardia Airport and Manhattan, (Exh. A,

¶¶ 11, 16-24), Super Shuttle Defendants' van was late in picking her up on April 7, 2006, (Exh.

A, ¶ 12), and she had difficulty meeting a Super Shuttle Defendants' van, which she had

previously reserved, on April 10, 2007.  (Exh. A, ¶¶ 16-37).  Stephens also notes that when the

Super Shuttle vans were late on April 7, 2006, and could not be located on April 10, 2006, she

rode Transit Defendants' buses.  (Exh. A, ¶¶ 14, 22, 27).  Stephens stated that, "she could get to

Manhattan by M-60 public bus more quickly than by waiting for SuperShuttle, and called

SuperShuttle to cancel the ride." (Exh. A, ¶ 14).  Plaintiff does not allege any problems with the

Transit Defendants during those occasions.  There is nothing in the Notice of Claim or Amended

Complaint that links the Transit Defendants with the Super Shuttle Defendants.

## ARGUMENT

### POINT ONE

**PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AGAINST THE TRANSIT DEFENDANTS BECAUSE THE CONDUCT SHE ALLEGES BY THE TRANSIT DEFENDANTS DOES NOT STATE A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION**

**A.    Dismissal Is Appropriate Because The Plaintiff Fails To Raise A Claim Upon Which Relief May Be Granted.**

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure is proper when "it appears beyond doubt that the plaintiff can

4

prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). On a motion to dismiss, the factual allegations are presumed to be true, and all reasonable inferences are drawn in favor of the plaintiff. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir. 2000). In drawing all inferences in favor of Stephens, however, dismissal is appropriate because the Plaintiff fails to allege any discriminatory actions by the Transit Defendants.

**B.      Plaintiff's Claim Should Be Dismissed Because The Basis Of Her Claim, The Bus Operator's Request That She Power Off Her Wheelchair, Is Not A Basis For Relief Under The ADA.**

The Court should dismiss Plaintiff's claims against the Transit Defendants because the Plaintiff failed to allege any discrimination against Plaintiff by the Transit Defendants in violation of the Americans with Disabilities Act (hereinafter "ADA"). Plaintiff's allegation that the Transit Defendants' bus operator requested that she power off her chair and delayed her transport for approximately 30 minutes prior to taking her to her destination does not describe an instance of disability discrimination. There is no regulation prohibiting a public transit entity from requesting a passenger to power off a wheelchair on public transportation and Plaintiff has cited none. 42 U.S.C. § 12131; *Stewart v. New York City Transit Auth.*, 2006 U.S. Dist. LEXIS 4279, *23 (S.D.N.Y. Feb. 6, 2006) ("In order to obtain compensatory damages for a Title II violation, a plaintiff must demonstrate intentional discrimination on the part of the government agency involved."), *citing Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 254 F.3d 846 (9th Cir. 2001) *and Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

Even if the request to power off her wheelchair were a violation of ADA regulations (and there is no basis for finding that it is), the ADA and its implementing regulations "do not contemplate perfect service for wheelchair-using bus commuters" nor does imperfect service constitute discrimination. *Stauber v. New York City Transit Auth.*, 10 A.D.3d 280, 282 (1st

5

Dep't 2004) (quoting *Midgett*, 254 F.3d 849-850). In a case involving allegations of access challenges, discourtesy and improper securing of a stroller-wheelchair on public buses, *Dorsett v. S.E. Pa. Transp. Auth.*, 2005 U.S. Dist. LEXIS 18351, *15-*17 (E.D. Pa. Aug, 29, 2005), the court rejected claims for damages and for injunctive relief under ADA Title II. Even though some of defendant's bus operators inappropriately challenged the Plaintiff, Southeastern Pennsylvania Transportation Authority (SEPTA) was not "deliberately indifferent" to its obligations nor was any "immediate threat of continued future harm" shown. *Id.* at *15-*17. Nor was it a violation of the ADA that disabled parties, "must at times request the use of the lift . . . [and must, at times] tell drivers how to properly secure the wheelchair when they have difficulties." *Id.* at *17.

In the present matter, in a legitimate concern for safety that is validated by operating manuals for power wheelchairs, the Bus Operator asked the Plaintiff to turn off her power wheelchair so he could secure her in place. He was concerned that, if the wheelchair was not powered off, the wheelchair control could accidentally be engaged and cause the wheelchair to move unexpectedly, placing himself, other passengers and the Plaintiff herself at risk. The Plaintiff does not state a claim for disability discrimination under Title II of the ADA or under NY State or City Human Rights Laws because, as alleged, the Bus Operator's action is not discrimination on the basis of disability.

The Plaintiff does not state a disability discrimination claim because the bus operator acted appropriately by requesting that Stephens power off her wheelchair. Though the Plaintiff alleges that she refused to power off her wheelchair because of her belief that, with her wheelchair powered off and unsecured, the bus's movement could throw her "about on the bus", (Exh. A ¶ 84), this statement should not be accepted as fact by the Court, even at this stage of

6

pleading. Her assertion is contrary to statements in numerous owner's manuals for power wheelchairs located by the Transit Defendants in their Internet research and attached as Exhs. F-K to the Goetcheus Declaration, it is contrary to the actual experience of knowledgeable Transit personnel, *see* Exh. E, Dispatcher Ely's Declaration, ¶ 4-7, and it is contrary to common sense as to the safe operating condition for such a device — which can scarcely be fit for use by disabled riders if it failed to lock upon loss of power. The owner's manuals note that the axle locks when power wheelchairs are turned off.[4]  Further, some manuals note the danger of electro-magnetic interference when a power wheelchair is on board another vehicle, potentially causing a number of problems, including unexpected movement.[5]  In addition, there are no FTA regulations that prohibit a public transit agency from requiring passengers to power off their wheelchairs while they are on public transit vehicles.

Further, it is undisputed that a road dispatcher responded to the incident and resolved the situation through securing Plaintiff's power wheelchair and ensuring that she was taken to her destination, even though she refused to power off her wheelchair. *See* Exh. A, ¶ 85. As the persuasive analysis in *Stauber* and *Dorsett* note, imperfect service, such as the delay Plaintiff experienced, is not a violation of the ADA. Plaintiff's claim must be dismissed because she has not alleged any discriminatory action by the Transit Defendants for which relief can be granted.

---

[4] *See* Exh. K, Cirrus Plus Owner's Manual; Exh. H, Jazzy Select 14 Owner's Manual,  and Exh. G, Go Chair Owner's Manual.
[5] Exh. F, SHOPRIDER Owner's Manual, Alanté Jr. Owner's Manual and Go Chair Owner's Manual mention that power wheelchairs should be powered off when they are near electro-magnetic interference from devices including cell phones and two-way radios such as those the Transit Defendants' operators use to communicate with Command Center because the interference can cause a power wheelchair that is powered on to move inadvertently.

#990443
2007-9948

## POINT TWO

## THE TWELFTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS OF THE PUBLIC AUTHORITIES LAW THAT ARE PREREQUISITE TO FILING SUIT.

**A.    The Pleading Requirement Of the Public Authorities Law Has Not Been Met.**

The court should dismiss the twelfth cause of action, alleging the tort of intentional infliction of emotional distress, because Ms. Stephens failed to provide adequate Notice of Claim to Transit Defendants. A Notice of Claim must provide information sufficient to enable the public agency to investigate the allegations contained in the Notice of Claim. *Canelos v. City of New York*, 37 A.D.3d 637, 637-638 (2nd Dep't 2007). In determining whether there has been compliance with the requirements of the Public Authorities Law § 1212(5) and the General Municipal Law § 50-e(2), the court must determine if, based on the claimant's description, the Transit Defendants would be able to locate the place, fix the time, and understand the nature of the accident. *Id.*; *Kim L. v. Port Jervis City Schl. Dist.*, 40 A.D.3d 1042 (2nd Dep't May 29, 2007).

Stephens' claim for intentional infliction of emotional distress must be dismissed because the mistaken, inconsistent, and uncorrected facts asserted by Stephens in her Notice of Claim frustrated the Transit Defendants' efforts to investigate her allegations prior to suit. In her sworn Notice of Claim, Stephens, who on information and belief is an attorney, stated that the incident which gave rise to her claims took place on *Saturday*, April 8, 2006, *at Chatham Square*, Manhattan, around 6:00 p.m. on a northbound *M-15* bus. The Notice of Claim is attached as Exh. B to the Goetcheus Declaration. Plaintiff's Notice of Claim provided the wrong date, the wrong time, the wrong location and the wrong bus line. Plaintiff further compounded the

8

inaccuracy by failing to appear for a statutory hearing when it was scheduled by the Transit Defendants. *See* Exh. C.

The Plaintiff's claims should be dismissed because, uncorrected, her misleading assertions prejudiced the Transit Defendants' ability to adjust the matter prior to suit. General Municipal Law section 50-e(6) provides that "a mistake, omission, irregularity or defect" in the Notice of Claim may be "corrected, supplied or disregarded" in the court's discretion, provided that the mistake, omission, irregularity, or defect was made in good faith, and the public corporation was not prejudiced thereby. *Id.*; *see also D'Alessandro v. New York City Transit Auth.*, 83 N.Y.2d 891, 896 (1994). In *Canelos*, the defendants were prejudiced by the plaintiff's mistaken description in her Notice of Claim of the location of the incident and her twenty-two month delay in seeking to amend the Notice of Claim.

The Plaintiff's inaccurate account in her Notice of Claim and in her Amended Complaint and her failure to attend a statutory hearing unduly prejudiced the Transit Defendants. The Notice of Claim provided the wrong date and wrong bus line, which made it especially difficult to gather facts about this matter as the Transit Authority employs thousands of bus operators who work on various work shift schedules. The Transit Defendants also sent the Plaintiff a letter on June 27, 2006 scheduling a statutory hearing. *See* Exh. D. The Plaintiff's failure to appear for the 50-h hearing removed an opportunity for the Plaintiff to correct the mistakes in her sworn Notice of Claim. The Plaintiff also failed in her Amended Complaint to correct her inaccurate account fully. In fact, though inconsistent with the Notice of Claim, the Amended Complaint also provided the wrong bus line, time and location. The compound effect of the Plaintiff's mistakes is that the Transit Defendants did not have an opportunity to adjust the matter prior to the Plaintiff's lawsuit, as required by N.Y. Pub. Auth. Law § 1212(4), and they have been

9

prejudiced by being exposed to substantial legal proceedings that might have been avoided if accurate information had been provided in the sworn Notice of Claim.

### POINT THREE

**NO RELIEF CAN BE GRANTED FOR THE PLAINTIFF'S CLAIM OF DISCRIMINATION PURSUANT TO THE NEW YORK CITY HUMAN RIGHTS LAW BECAUSE THE TRANSIT DEFENDANTS ARE EXEMPT FROM LIABILITY UNDER THE STATUTE.**

**A.    A Recent State Court Decision And The Human Rights Commission Itself State That The Transit Defendants Are Exempt From The City's Human Rights Law.**

In the Eleventh Cause of Action against the Transit Defendants, the Plaintiff alleges a claim for discrimination pursuant to the NYCHRL. (Admin. Code of the City of New York § 8-101). However, the Transit Defendants are exempt from liability under the NYCHRL. New York Public Authorities Law § 1266(8), effective May 15, 2000, provides that no municipality shall have jurisdiction over any facilities of the Metropolitan Transportation Authority (MTA) or the New York City Transportation Authority (NYCTA), or any of their activities or operations. Thus, even affording Plaintiff all favorable inferences, Plaintiff's claims under the NYCHRL must fail.

A recent, thoughtful, New York State court decision has accepted the Transit Defendants' argument and ruled that the NYCTA is not subject to the New York City Human Rights Law.[6] *See Tang v. New York City Transit Auth.*, No. 05-16582, 2007 N.Y. Misc. LEXIS 4402 (Kings County Sup. Ct., May 22, 2007). The *Tang* court highlighted the language of amendment PAL § 1266 (8) in its reasoning, which expressly excludes the Transit Authority from the NYCHRL. *Id.* at *3. Additionally, the Court noted that the Human Rights Commission itself states that it

---

[6] While several federal District Courts have rejected this argument, it concerns a matter of state law. As yet, there is no appellate ruling, state or federal, on the matter.

lacks jurisdiction to hear employment discrimination cases filed against the Transit Authority. *Id.* In light of *Tang*, Plaintiff's claim of discrimination under the NYCHRL should be dismissed.

Prior to its amendment including the Transit Authority, the Second Circuit summarized the effect of PAL § 1266(8): the "facilities, activities and operations of the MTA [and the other entities covered by that provision] are not subject to the jurisdiction of any local authorities." *Rose v. The Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d Cir. 1987), *cert. denied*, 485 U.S. 936 (1988). In light of the amendments to PAL § 1266(8), which added the Transit Authority to the entities jurisdictionally exempted from municipal and other local laws, the NYCHRL's provisions dealing with disability discrimination no longer reach the activities and rules of the Transit Authority.

The Plaintiff cannot assert a claim under the NYCHRL because the Transit Defendants, like the MTA, are now exempt from the Human Rights Law. Prior to the amendment to PAL § 1266(8), the New York state Court of Appeals, in *Levy v. City Commission on Human Rights*, 85 N.Y.2d 740 (1995), held that the New York City Transit Authority was subject to the jurisdiction of the New York City Commission on Human Rights. The court wrote that "there is no provision in the Public Authorities Law which appears to preclude the City Commission's jurisdiction over the New York City Transit Authority." *Id.* at 745. Though several federal cases continue to follow the *Levy* decision and have held that the Transit Defendants are not exempt from the NYCHRL, *see Everson v. New York City Transit Auth.*, 216 F. Supp.2d 71, 79-81 (E.D.N.Y. 2002); *see also Muhammad v. New York City Transit Auth.*, 450 F. Supp.2d 198, 209 (E.D.N.Y. 2006), New York Public Authorities Law § 1266(8) was amended to include the New York City Transit Authority. The statute now states, "Except as hereinafter specifically

11

provided, no municipality or political subdivision, including but not limited to a county, village, town or school or other district shall have jurisdiction over any facilities of the authority and its subsidiaries, and New York City Transit Authority, and its subsidiaries, or any of their activities or operations." Public Auth. L. § 1266(8). The amendment to § 1266(8), as emphasized by the *Tang* court, provides the language, which the *Levy* court stated was missing, exempting the Transit Defendants from the NYCHRL.

The New York City Human Rights Commission's position, that it does not have jurisdiction over the NYCTA, supports the Transit Defendants' exemption from the NYCHRL. *See* Exh. L to Goetcheus Declaration, Notices of Administrative Closure, N.Y.C. Commission on Human Rights, *Pinkston v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AR-01-1010596-E (March 7, 2002); *Aronica v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AD-01-1010481-D (March 7, 2002); *Gethers v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-D-01-1010120-D (March 7, 2002); *Lambey v. MTA New York City Transit Auth.*, Cmplt. No. M-E-LR-01-1011050-E (March 7, 2002); and *Blitzer v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-DS-00-1009264-E (July 31, 2002). New York State Law grants substantial weight to interpretation of law by the administrative agencies charged with interpreting and enforcing that particular law. *See Gaines v. N.Y.S. Div. of Housing*, 90 N.Y.2d 545, 548-549 (1997) ("We have repeatedly held that the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable"). In this case, the interpretation of the NYCHRL by the Human Rights Commission, exempting the NYCTA from its jurisdiction, is reasonable because it comports with the language of amended Public Authorities Law § 1266(8). In accordance with the deference afforded administrative agencies

12

under New York State Law, this Court should respect the Commission's interpretation of the

NYCHRL and find the Transit Defendants exempt from the NYCHRL.

**B.      This Court Should Follow The *Tang* Court's Persuasive Interpretation Of State Law And Find The Transit Defendants Exempt From The NYCHRL.**

The federal courts should defer to state courts on interpretation of state law. *See Reeves*

*v. Johnson Controls World Servs.*, 140 F.3d 144 (2nd Cir. 1998) (relying on a state court

decision and rejecting subsequent, inconsistent, federal district court decisions in holding that the

definition of disability under the New York Human Rights Law differs from that of the ADA)

(citing *State Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213 (1985)). *Reeves* noted

that some federal court decisions, which continued to interpret the definition of disability as the

same under the New York State Human Rights Law and the Americans with Disabilities Act,

were incorrectly disregarding the state court's interpretation of state law. *Reeves*, 140 F.3d at

156 (stating that a federal court must, "ascertain from all the available data what the state law is

and apply it rather than . . . prescribe a different rule, however superior it may appear," (quoting

*West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940))). No New York State appellate

court has yet addressed the issue of whether the New York City Transit Authority is subject to

the New York City Human Rights Law. However, the court's analysis in *Tang* is a clear

indication of current state interpretation of the New York City Human Rights Law. In light of

the *Tang* Court's persuasive analysis, Plaintiff's claims of discrimination under NYCHRL should

be dismissed.

## POINT FOUR

### PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST THE TRANSIT DEFENDANTS.

Plaintiff's claims for punitive damages are not available against the Transit Authority, as

it is a public benefit corporation. 42 U.S.C. § 1981a(b)(1); New York State Executive Law

#990443
2007-9948

§ 297(9); *Thoreson v. Penthouse Intl.*, 80 N.Y.2d 490, 495, 591 N.Y.S.2d 978, 979 (1992)

(punitive damages are not permissible in a statutory action under Executive Law § 297(9));

*Bowles v. New York City Transit Auth.*, No. 00-4213, 2006 U.S. Dist. LEXIS 32914, *25, n14

(S.D.N.Y. May 23, 2006) ("Transit however is a municipal corporation, and as such is not

subject to punitive damages."); *Barr v. New York City Transit Auth.*, No. 99-7927, 2002 U.S.

Dist. LEXIS 2968, *24 (E.D.N.Y. Feb. 20, 2002) ("Punitive damages … cannot be recovered

against NYCTA.") *See Krohn v. New York City Police Dep't*, 2 N.Y.3d 329, 778 N.Y.S.2d 746

(2004) (punitive damages not available in an employment discrimination case against a

municipality under the NYSHRL or the NYCHRL.); *Karoon v. New York City Transit Auth.*, 241

A.D.2d 323, 324, 659 N.Y.S.2d 27, 29 (1st Dept. 1997) ("The Court of Appeals has clearly held

that the State and its political subdivisions, as well as public benefit corporations such as the

instant Transit Authority defendants, are not subject to punitive damages (*citations* omitted).").

Accordingly, Plaintiff's claims for punitive damages must be dismissed.

### POINT FIVE

### PLAINTIFF'S CLAIMS AGAINST THE TRANSIT DEFENDANTS SHOULD BE SEVERED FROM THE CLAIMS AGAINST THE SUPER SHUTTLE DEFENDANTS.

**A.** **Severance Should Be Granted Because There Is No Relationship Between the Claims Against The Transit Defendants And Those Against The Super Shuttle Defendants.**

To the extent that the Transit Defendants' motion to dismiss is denied in whole or in part,

they move pursuant to Rule 21 of the Federal Rules of Civil Procedure to sever the Seventh

through Twelfth Causes of Action, which the Plaintiff raised against them, from the First through

Sixth Causes of Action raised against the Super Shuttle Defendants.  In determining whether to

sever claims, the court should consider: 1) whether the claims arise out of the same transaction or

14

occurrence; 2) whether the claims present some common questions of law or fact; 3) whether settlement of the claims or judicial economy would be facilitated; 4) whether prejudice would be avoided if severance were granted; and 5) whether different witnesses and documentary proof are required for the separate claims. *Morris v. Northrup Grumman Corp.*, 37 F.Supp.2d 556, 580 (E.D.N.Y. 1999). The court has broad discretion in deciding whether to sever claims or parties. *See New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) *cert. denied*, *Hendrickson Bros., Inc. v. New York*, 488 U.S. 848 (1988). Severance requires the presence of only one of the aforementioned factors. *Cestone v. Gen. Cigar Holdings, Inc.*, No. 00-3986, 2002 U.S. Dist. WL 424654, at *2 (S.D.N.Y. March 18, 2002) (quoting *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97-0607, 2000 U.S. Dist. WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)). In this case, all factors support severance.

1.  **The Claims Brought Against The Transit Defendants And The Super Shuttle Defendants Arise Out Of Different Occurrences.**

The claims raised by the Plaintiff against the Transit Defendants do not arise out of the same occurrence as the claims brought against the Super Shuttle Defendants. The only common factor is the Plaintiff. The claims brought against the Transit Defendants pertain to an alleged incident which took place at a different time, location, and with different persons than the claims brought against the Super Shuttle Defendants. *Compare Morris*, 37. F.Supp.2d at 581 (granting separate trials where plaintiffs worked in separate departments under separate supervisors), *with Kirk v. Metro. Transp. Auth*, No. 99-3787, 2001 U.S. Dist. WL 25703, *3 (S.D.N.Y. Jan. 10, 2001) (denying severance of claims because common issues of fact regarding the incident and MTA policy will be relevant at both trials, and each action will involve at least some of the same witnesses). The fact that the claims arise from different factual occurrences weighs in favor of severance. *Cf. Cashman v. Montefiore Med. Ctr.*, No. 92-4551, 1996 U.S. Dist. LEXIS 650,

#990443
2007-9948

663-664, (S.D.N.Y. Jan. 25, 1996) (holding that the fact that both claims arise from the same factual occurrence weighs against severance.).

The Super Shuttle Defendants and the Transit Defendants are wholly unrelated entities. However, even if there was some relation, severance of the claims is appropriate when, as is the case here, there are overwhelming differences in the circumstances which give rise to the claims. *See Tardd v. Brookhaven Nat. Lab.*, No. 04-3262, 2007 U.S. Dist. WL 1423642, *10 (E.D.N.Y. May 8, 2007) (granting severance of claims despite presence of some overlap of facts in the plaintiffs' discrimination suits alleging discrimination by overlapping but not identical defendants); *see also Sidari v. Orleans County*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) ("[E]ven if some evidence may be relevant in both cases, that alone, does not warrant consolidation of the two actions."). The events which give rise to the claims against Super Shuttle took place at different locations, on different days, and involve completely different actors except for the Plaintiff. The overwhelming differences in the circumstances that gave rise to the claims against the Transit Defendants and those against Super Shuttle support severance.

### 2.    The Lack Of Common Facts Or Laws Weighs In Favor Of Severance.

Different claims that do not present common facts or laws should be severed. *See Weir v. Litton Bionetics, Inc.*, No. 85-2545, 1986 WL 11608, at *6 (D. Md. May 29, 1986) (severing age discrimination claims of different plaintiffs where, although the plaintiffs relied on the same legal theories, "the facts that pertain to the claim of each are quite different"). The Transit Defendants, as public transportation entities, are subject to Title II of ADA, not Title III, while the Super Shuttle Defendants, as private transit providers, if subject to ADA, are covered by Title III, not Title II. *See Green v. City of New York*, 465 F.3d 65, 74 (2nd Cir. 2006) ("Title II of the ADA applies only to public entities"); 42 U.S.C. § 12184(a) (stating that Title III covers private

16

entities whose primary business is transporting people). Also, the Transit Defendants are subject to the Rehabilitation Act, but unless it is a recipient of federal funds, the Super Shuttle Defendants are not subject to the Rehabilitation Act. 29 U.S.C. § 794.

The claims should be severed because there are no common facts regarding the claims against the Transit Defendants and those against the Super Shuttle Defendants. The claims against the Transit Defendants arise out of one alleged occurrence, on Sunday, April 9, 2006 at approximately 6:30 pm.[7] No claims about Super Shuttle arise out of that occurrence. Similarly, the claims against the Super Shuttle Defendants arise out of occurrences on April 7, 2006 and April 10, 2006. No claims against the Transit Defendants arise out of those occurrences. The claims brought against the Transit Defendants and the Super Shuttle Defendants must be severed because they arise from different and wholly unrelated factual occurrences and different law is applicable.

### 3.    Judicial Economy Weighs In Favor Of Severance.

Keeping the claims together is uneconomical. *Cestone*, 2002 U.S. Dist. WL 424654 at *3 ("Two shorter trials will be more efficient and less expensive than one long, combined trial in which the Court must constantly caution the jury to not consider evidence that is irrelevant or inadmissible against a particular Defendant."); *see also Williams v. Hernandez*, No. 02-4473, 2003 U.S. Dist. WL 21664815, at *1 (S.D.N.Y. July 15, 2003). It is inefficient to keep two unrelated defendants together because the jury would be forced to expend considerable time considering what is relevant and admissible to each party. It also unnecessarily complicates the litigation by requiring coordination among wholly unrelated defendants, resulting in excessive

---

[7] As detailed in the Statement of Facts, this is the time and date of the incident Transit Defendants believe gave rise to the claims against it. Plaintiff has provided inaccurate (and inconsistent) dates, times, locations and bus lines in her Notice of Claim and her Amended Complaint,.

#990443
2007-9948

use of judicial resources and unnecessary litigation costs. Therefore, the concerns of judicial economy support severance.

### 4.    Continued Consolidation is Prejudicial to All Defendants.

Keeping unrelated claims together prejudices both the Transit Defendants and Super Shuttle Defendants because it risks confusing a jury into finding a relation between the claims and the defendants. *See Morris*, 37 F.Supp.2d at 581 ("The potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants . . . "). Hearing unrelated evidence which is inadmissible and irrelevant to some but not other defendants is confusing to the jury and could prejudice all parties. The concern for avoiding prejudice weighs in favor of severing the claims.

### 5.    Different Witnesses And Documentary Proof Weigh In Favor Of Severance.

The claims arise from separate events, different circumstances, contain wholly separate facts, lack any common witness other than Plaintiff and lack any common documentary proof. The lack of common witnesses or common documentary support weighs in favor of severing the claims.

### B.    Severance Should Be Granted Because All Factors Weigh In Favor Of Severance

Courts balance the factors for determining whether to grant severance. *See Cashman*, 1996 U.S. Dist. LEXIS 650 (granting plaintiff's motion to sever a defendant after weighing competing considerations of the potential prejudice to the plaintiff with the inefficiency of multiple trials.). In this case, all factors support severance: the claims do not arise out of the same transaction or occurrence, the claims do not present common questions of law or fact, judicial economy is improved by severing the claims, the defendants would be prejudiced if unrelated claims were not severed, and there are different witnesses and documentary proof

18

required for the separate claims. The Transit Defendants' motion for severance should be granted because every factor supports severing the claims.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Transit Defendants' motion to dismiss the complaint be granted, in whole or in part, and, to the extent that it is not granted in whole, that the surviving claims against the Transit Defendants be severed from those against the SuperShuttle Defendants, and the Transit Defendants be granted thirty (30) days from entry of an order deciding their motions to serve and file an Answer on any surviving claims against them, and that such other and further relief be granted as the Court deems just and proper.

Dated: Brooklyn, New York
      August 13, 2007

Respectfully submitted,
**MARTIN B. SCHNABEL**
Vice President and General Counsel
Attorneys for Transit Defendants-
   New York City Transit Authority and
   Manhattan and Bronx Surface Operating
   Authority
130 Livingston Street, Room 1233
Brooklyn, NY 11201
(718) 694-3889

**By: Ann Burton Goetcheus (ABG-7265)**
Executive Agency Counsel

Joshua Jacobs, Law Clerk, Of Counsel

To:
Aaron David Frishberg, Esq.
Attorney for Plaintiff
116 West 111th Street
New York, NY 10026

cc: Joseph Cosby
Senior Counsel
Attorneys for SuperShuttle Defendants
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, DC 20006-4604
Phone: (202) 454-2880
Facsimile: (202) 454-2805

19

#990443
2007-9948

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x

ROBIN STEPHENS,

                **Plaintiff,**

            -against-

SUPER SHUTTLE, INC., SUPER SHUTTLE
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY, MANHATTAN AND
BRONX SURFACE TRANSIT OPERATING
AUTHORITY and "JOHN DOE," NYCT BUS
DRIVER,

                **Defendant.**

————————————————————————x

SDNY # 07 CV 5614

(Index No.: 07/104791)

**AFFIDAVIT OF SERVICE**
**BY MAIL**_____

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF KINGS)

      **NURY AROCA** being duly sworn deposes and says:

      I am an employee of the New York City Transit Authority, in the office of Martin B. Schnabel, Attorney for defendant. I am over the age of 18 years and am not a party to this action. On the 13th day of August 2007, I served the annexed **Memorandum of Law in Support of Transit Defendants' Motion to Dismiss the Complaint in Whole or in Part and/or to Sever Claims Against the Transit Defendants from those Against the Supershuttle Defendants,** upon:

    Joseph Cosby, Senior Counsel              Aaron David Frishberg
    Tighe Patton Armstrong & Teasdale     116 W. 111th Street
    1747 Pennsylvania Avenue, N.W. Suite 300  New York, N.Y. 10026
    Washington, D.C. 20006

by delivering a true copy of the same securely enclosed in a post-paid wrapper in a Post Office Box regularly maintained by the United States Government at 130 Livingston Street, Brooklyn, New York 11201, properly addressed to said attorney(s) at said address within the state with a copy sent by facsimile. This address had been previously designated by said attorney(s) for that purpose, upon the preceding papers in this action.

                                         _____
                                         NURY AROCA

Sworn to before me this
13th day of August, 2007

_____
NOTARY PUBLIC

#995694               GAIL ROGERS
             Notary Public, State of New York
               No. 01RO4992370
             Qualified in Kings County
           Commission Expires Feb. 24, 20 10