UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ROBIN STEPHENS,

DKT. NO. 07-cv-5614 (VM)

      Plaintiff

        v.

SHUTTLE ASSOCIATES, L.L.C.,
SUPERSHUTTLE INTERNATIONAL, INC.,
NEW YORK CITY TRANSIT AUTHORITY,
MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY, and "JOHN DOE," NYCT
BUS DRIVER
      Defendants

_____

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE TA DEFENDANTS' MOTION TO DISMISS, FOR SUMMARY
JUDGMENT OR FOR SEVERANCE, AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION TO AMEND THE "AMENDED COMPLAINT"

*Aaron David Frishberg (AF 6139)*
*116 W. 111th Street*
*New York, NY 10026*
*212 740 4544*
*Attorney for Plaintiff Robin Stephens*

Table of Authorities

Court Rules

F.R. Civ. P. Rule 56 (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.R. Civ. P. Rule12 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.R.Civ P. Rule 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.R.Civ.P. Rule 26 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rule of Civil Procedure 56 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rule of Evidence Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Evidence Rule 803 (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Federal Rules of Evidence Rule 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Local Rules of the Southern and Eastern Districts of New York, L. R. 56.1 . . . . . . . . . . . . 9

Cases
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) . . . . . . . . . . . . . . . . . . . . . . . 21

Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998), vacated
527 U.S. 1031 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D'Allesandro v. New York City Transit Authority, 83 N.Y. 2d 891 (1994) . . . . . . . . . . . . . 14

Feingold v. New York, 366 F. 3d 138 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Garcia v. State University of New York Health Sciences Center, 280 F. 3d 98 (2d Cir. 2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 514 (2d Cir. 2001) . . . . . . . . . . . . . . 21

Hellstrom v. United States Department of Veterans Affairs, 201 F.3d 94 (2d Cir. 2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Henrietta D. v Bloomberg, 331 F. 3d 261 (2d. Cir. 2003), cert. denied _U.S._, 124 S. Ct. 1658
(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Hudson River Sloop Clearwater, Inc. v. Department of the Navy, 891 F. 2d 414, 422 (2d Cir.
1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Levy v. City Commission on Human Rights 85 N.Y.2d 740, 628 N.Y.S.2d 245 (1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Meloff v. New York Life Insurance Co., 51 F. 3d 372, 375, (2d. Cir. 1995) . . . . . . . . . . . 11

Midgett v. Tri-County Metropolitan Transportation District, 254 F. 3d 846 (9th Cir. 2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Stamm v. New York City Transit Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Stewart v. New York City Transit Authority, 2006 U.S. Dist. LEXIS 4279 (S.D.N.Y. 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d 506 (2d Cir. 1989) . . . . . . . . . 11

Regulations

49 C.F.R. § 37.173  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. § 791 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statutes

42 U.S.C. § 12132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 12164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 12184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Americans with Disabilities Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 20

Americans with Disabilities Act Title II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

Americans with Disabilities Act Title II B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Americans withDisabilities Act Title III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

General Municipal Law § 50-e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

General Municipal Law § 50-h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

General Municipal Law §50-e (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Local Civil Rights Restoration Act of 2005, § 3 (7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

New York City Human Rights Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

New York State Executive Law § 290, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Public Authorities Law.§ 1216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rehabilitation Act of 1973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Table of Contents

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      Point I.        THE  AMENDED  COMPLAINT  STATES  CAUSES  OF ACTION
                  AGAINST THE TA DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          A.      Plaintiff States a Claim Under the Americans with Disabilities Act and
                the Rehabilitation Act of 1973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          B. Plaintiff States a Claim Based on New York State Law for Discrimination5
          C. Plaintiff States a Claim Under the New York City Human Rights Law
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          E. Plaintiff's Common Law Claims For Infliction of Emotional Distress are
             Viable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      Point II.      DEFENDANTS' APPLICATION FOR SUMMARY JUDGMENT
                    SHOULD BE DENIED OR DEFERRED . . . . . . . . . . 9
          The TA Defendants Motion for Summary Judgment Should be  Denied for
             Failure to Comply with Local Rule 56.1.
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          B.      Decision on The Motion Should be Deferred Pending Discovery
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      Point III.     DEFENDANTS'  MOTION FOR SUMMARY JUDGMENT
                  SHOULD BE REJECTED ON THE MERITS . . . . . . . . . . . . . . . . . 16
          A. The Transit Defendants' "Evidence" not in Admissible Form Should be
             Rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             1.  The  Dispatcher's  Declaration  Contains  Unqualified  Opinion
                Testimony and  Contains Hearsay  Lacking a Basis in Personal
                Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             2. The Tape Transcript is Not Authenticated . . . . . . . . . . . . . . . . . . 17
             3. The Excerpts from Power Chair Operating Manuals Are Inadmissible
                as Hearsay and are Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             4.  The  Opinion of Counsel is Inadmissible Non-Expert Opinion
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
             5. Irrelevant Documents are Submitted Concerning a Purported Notice
                of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          B.      Material Facts are in Controversy as to Each Cause of Action so That
             Summary Judgment Should be Denied on the Merits . . . . . . . . . . 19
      Point V.      PLAINTIFF'S  CAUSES  OF  ACTION  AGAINST  THE TA
                  DEFENDANTS  SHOULD  NOT  BE  SEVERED  FROM  HER
                  SUIT AGAINST THE SUPERSHUTTLE DEFENDANTS . . . . . . . . 21
      Point VI.     PLAINTIFF'S  CROSS-MOTION  FOR  LEAVE  TO AMEND
                  SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COUNTER-STATEMENT OF FACTS

Plaintiff's disability discrimination suit, as it bears on the acts of Defendants New York City Transit Authority ("NYCTA") and Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") (collectively, "the TA Defendants"), is based on an incident in which Plaintiff was made to sit in her wheelchair on a bus she had boarded, while the operator refused to move the bus. The operator demanded that she turn off the power on her wheelchair, but never explained why, and never offered nor attempted to strap in her wheelchair. When the dispatcher arrived, some forty minutes later, he offered to strap Plaintiff in. She immediately agreed, and he secured her chair and drove her directly to her destination.

The bus operator's discriminatory conduct was directly attributable to the reckless disregard by the TA defendants of their obligation to train to proficiency their bus operators in providing service to people with disabilities using wheelchairs, which Robin Stephens reports has resulted in more than half the TA bus drivers failing to offer to secure her wheelchair when she rides a TA bus.

PROCEDURAL HISTORY

Plaintiff commenced a timely action in State court, alleging violations of Title II and II B of the Americans with Disabilities Act, and violations of the Rehabilitation Act of 1973 against the TA Defendants, joining these claims with state law discrimination claims and common law claims. Also joined were claims under Title III of the ADA against the operators of Supershuttle transport to and from the airport the same weekend, and state law discrimination claims. The TA defendants, with the consent of the Supershuttle defendants, removed this

2

action to federal court, where Plaintiff amended to correct the identification of the Supershuttle defendants, prior to the filing of responsive pleadings.

The TA defendants, in lieu of answering, have moved to dismiss for failure to state a claim. They have also attached some sixty pages of documents to their motion, and requested that their motion to dismiss be treated as a motion for summary judgment. Plaintiff cross-moves to amend the complaint.

## LEGAL ARGUMENT

Point I.        THE AMENDED COMPLAINT STATES CAUSES OF ACTION AGAINST THE TA DEFENDANTS

A.        Plaintiff States a Claim Under the Americans with Disabilities Act and the Rehabilitation Act of 1973

A claim for discrimination on the basis of disability against a government entity by a plaintiff seeking equitable relief must show that the plaintiff is a qualified person with a disability, and that she has denied reasonable access to the public entity's services, or has been denied equal service by the public entity due to her disability. 42 U.S.C. § 12132. Henrietta D. v Bloomberg, 331 F. 3d 261 (2d. Cir. 2003), cert. denied _U.S._, 124 S. Ct. 1658 (2004). A claim under the Rehabilitation Act must further show that the government entity was a recipient of federal funds. 29 U.S.C. § 791 et seq.

Insofar as a plaintiff seeks compensatory damages[1] against a government entity not

---

[1]The TA Defendants devote a Point of their brief to defeating the availability of a punitive damages remedy against them. Plaintiff has never sought such a remedy. See Defendant's Exhibit A, Amended Complaint, *ad damnum* clause, seeking "exemplary damages against those parties against whom exemplary damages are permitted." (Emphasis supplied).

3

subject to Eleventh Amendment immunity, courts have also required a showing of intent, which may be supported by evidence of deliberate indifference.[2]  Garcia v. State University of New York Health Sciences Center, 280 F. 3d 98 (2d Cir. 2001). And see, Midgett v. Tri-County Metropolitan Transportation District, 254 F. 3d 846 (9th Cir. 2001).

Plaintiff's Amended Complaint , at ¶¶ 1-2. 6-7, and 75-88 clearly delineates facts, including the failure of the TA defendants to adequately train and supervise line employees to minimize the occurrence of such violations of rights, which make out a *prima facie* case of liability for injunctive relief and compensatory damages on these causes of action.

Defendants argue that Robin Stephens is not entitled to a "perfect" bus system, and cite cases in which the ADA was held not to offer a remedy.  But these cases were decided on summary judgment, when the Plaintiff had been unable to show after being permitted

---

[2]

Insofar as Stewart v. New York City Transit Authority, 2006 U.S. Dist. LEXIS 4279 (S.D.N.Y. 2006), relying on Garcia v. State University of New York Health Sciences Center, 280 F. 3d 98 (2d Cir. 2001) held that a showing of intentional discrimination required a showing that it was motivated either by discriminatory animus or ill will stemming from a plaintiff's disability, it is respectfully submitted that Judge Sweet, in Stewart, misapplied Garcia to a non-State governmental entity.  The Second Circuit, in Garcia, had explicitly limited its holding to State governments, based on Eleventh Amendment immunity, continuing to require only "deliberate indifference" to establish the liability of non-State government entities:

> we have held that a plaintiff may recover money damages under either Title II of the ADA or §§ 504 of the Rehabilitation Act upon a showing of a statutory violation resulting from "deliberate indifference" to the rights secured the disabled by the acts. Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds by 527 U.S. 1031 (1999).  Although today's decision alters that holding by requiring proof of discriminatory animus or ill will for Title II damage claims brought against states, nothing we have said affects the applicability of the deliberate indifference standard to Title II claims against non-state governmental entities.

discovery that the defendant government provider of transportation services was responsible for a systemic failure. Plaintiff has not been afforded the opportunity to establish this claim.

Her suit should not be dismissed for failing to utter talismanic words concerning a systemic problem, and then resorting to the qualifier "upon information and belief" to justify the allegation before discovery could sustain it.

B. Plaintiff States a Claim Based on New York State Law for Discrimination

New York State Executive Law § 290, et seq., the New York State Human Rights Law, basically parallels the Americans with Disabilities Act and the Rehabilitation Act, except that in some respects it is broader in the protections it offers, e.g., protection of persons, such as airline attendants with obesity, who may not have an impairment serious enough to meet the ADA definition, but whose lives are significantly affected by the conditions they live with and who have been subject to discrimination. Since the impairment Plaintiff alleges is a need to use a wheelchair for mobility, her disability is not in the grey area between the New York State and federal definition. It remains to be seen whether Plaintiff's claim under State law would have to be dismissed without prejudice if this Court were to agree with Defendants' contention that she is not entitled to a "perfect" transit system, i..e., one which does not leave her stranded for forty minutes on a bus if she doesn't comply with illegal directives from bus operators. Plaintiff would submit that if the federal law is so limited, the legislature of New York did not intend to create a similarly anemic remedy for discrimination by governmental service providers.

New York State also permits suit against an individual, for "aiding and abetting"

5

discrimination.  Thus, although Bus Operator Gregory, designated as "Bus Driver John Doe" is not properly a defendant based on the federal claims, he can be made liable under New York State law.  Assuming, *arguendo*, that an element of intent is present in New York law, it is clearly met by the conduct alleged. Bus Operator Gregory was certainly intent on treating Robin Stephens differently with respect to her riding on the TA bus he was operating based on her disability.  It was not every person boarding the bus with an electronic device, e.g., an Ipod, who was directed to turn it off before the bus could proceed. If he believed he was justified in this different treatment, this goes to the existence of malice, not of intentional discrimination. No doubt, many a Southron in the era of *de jure* racial segregation believed, too, that their intentional conduct was justified.  Such a belief does not create a defense to discriminatory conduct.

C. Plaintiff States a Claim Under the New York City Human Rights Law

The TA Defendants contend that the New York City Transit Authority and MaBSTOA are not subject to the New York City Human Rights Law.  They argue for the dismissal of Plaintiff's claims under the New York City Human Rights Law even as they acknowledge that the highest court of New York State has determined that the TA was within the jurisdiction of the of the New York City Human Rights Law.  Levy v. City Commission on Human Rights 85 N.Y.2d 740, 628 N.Y.S.2d 245 (1995).

The TA Defendants urge that this Court should not choose the interpretation of New York state law that it believes would make the best policy, but should follow the law of New York as enunciated by its highest court.  Ironically, having invoked this policy, defendants seek to have this Court violate it. The TA defendants urge this Court to replace the judgment of the

6

New York Court of Appeals with its own judgment as to what the highest court of New York might do in light of some language amending the statute, guided by a single decision of a *nisi prius* court. For this court to choose to follow a trial level court in the face of a contrary New York Court of Appeals opinion would be tantamount to making law based on policy choices rather than by following <u>Erie</u> doctrine.

The rationale of the New York Court of Appeals, in deciding <u>Levy</u>, was that nothing about the TA's functions and purposes is furthered by engaging in discrimination, and that therefore a local anti-discrimination statute cannot possibly interfere with the functions and purposes of the TA. This rationale continues to be persuasive, and there is no reason given by the TA defendants why the Court of Appeals might decide to construe the statute differently, other than the fact that an amendment contains language the absence of which was noted as an alternate ground for its decision by the Court of Appeals.

Defendants cite but misapply the doctrine that deference is due to an agency in implementing a statute it is charged with enforcing. The decisions cited by the TA defendants are not implementing regulations of the New York City Human Rights Commission promulgated by the Commissioner. Such regulations, adopted under the New York City Administrative Procedures Act, upon deliberation after pre-publication and an opportunity by interested parties to comment, would be entitled to a degree of deference. These, however, are decisions by individual investigators whose role in the agency is to make decisions concerning the existence of probable cause in cases which come before them. Absent a rationale for their opinions, which is not discernible from what has been produced by Defendants, their value as persuasive authority is nil.

7

Defendants also note that several federal courts have addressed the issue of the jurisdiction of the New York City Human Rights Code over the TA, and have reached a result opposite that urged on this Court.  Curiously, they omit any mention of an opinion, <u>Stamm</u> v. <u>New York City Transit Authority</u>, in which record counsel for the TA is the same as in the case at bar.  A copy of the pertinent portion of the highly persuasive opinion of Judge Sandra Townes, of the Eastern District of New York, holding the TA to be subject to the New York City Human Rights Code,  is appended as Plaintiff's Exhibit 2.

Prudential reasons as well militate in favor of retaining the claim against the TA defendants based upon the New York City Human Rights Code. Should the Plaintiff's claim be dismissed, the first opportunity for the Plaintiff to challenge that dismissal would be after the adjudication of the remaining claims.  If the Second Circuit, with or without the assistance of a certification to the New York Court of Appeals, concluded that there is a viable claim against the TA defendants based on the New York City Human Rights Code, the remedy would be the reinstatement of that cause of action and remand for a second trial. The New York City Council has declared that the federal and state law protections against discrimination should be viewed as a floor, rather than a ceiling, in construing the New York City Human Rights Code. Local Civil Rights Restoration Act of 2005, § 3 (7).  It is therefore entirely possible that following a dismissal of Plaintiff's New York City Human Rights Code claim and plenary determination of Plaintiff's remaining claims, a cause of action found to exist and not redundant with others could require a second trial, either to re-determine liability or to impose a remedy unavailable under federal and state law.

Even the dismissal of the New York City Human Rights Code claim against the TA

8

defendants could leave Plaintiff with a claim under that statute against the individual defendant, Bus Operator Gregory, initially sued as "John Doe, Bus Driver."  In an analogous situation, claims against the New York State Department of Motor Vehicles for discrimination against an employee under the New York City Human Rights Code were dismissed because the DMV was not subject to jurisdiction of the New York City Human Rights Code.    The Second Circuit permitted the case to continue against the individual employees who had engaged in the creation of a hostile work environment, because they, unlike the State, were subject to the New York City statute.        <u>Feingold</u> v. <u>New York</u>, 366 F. 3d 138 (2d Cir. 2004).

> E. Plaintiff's Common Law Claims For Infliction of Emotional Distress are Viable

The TA Defendants seek the dismissal of Plaintiff's common law claims for infliction of emotional distress, asserting as their sole ground the alleged failure of the Plaintiff to comply fully with the General Municipal Law notice and hearing provisions, at GML § 50-e et seq., made applicable to these Defendants by the § 1216 of the Public Authorities Law. However, their assertions are based upon extrinsic evidence, and are therefore better addressed below.  The pleading requisite, that a timely notice was filed, and that the Defendants have not adjusted it, is included in the Amended Complaint.

Point II.        DEFENDANTS' APPLICATION FOR SUMMARY JUDGMENT
                 SHOULD BE DENIED OR DEFERRED

A.    The TA Defendants Motion for Summary Judgment Should be Denied for Failure to Comply with Local Rule 56.1.

Local Rule 56.1 provides that:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. *Failure to submit such a statement may constitute grounds for denial of the motion*
....

(d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), ...must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56 (e).

L. R. 56.1, Local Rules of the Southern and Eastern Districts of New York. (Emphasis supplied).

The TA defendants, rather than the Court, have initiated the conversion of the motion to dismiss as one for summary judgment. They are therefore bound by the Rule applicable to all litigants moving for summary judgment, which delineates for the non-moving party and for the Court the alleged facts which are the basis for the moving party's assertion of entitlement to summary judgment, and their supposed evidentiary basis.

In the case at bar there has not even been an answer interposed by the TA Defendants. This circumstance heightens the need for these defendants to go on record with more than a gestalt inkblot of purported evidence from which they ask the Court and opposing counsel to derive the facts which movants claim entitle them to summary judgment.

The TA defendants' tactic amounts to a species of trial by ambush. By not explaining what they intend to prove by each exhibit, they gain the advantage on their motion for summary judgment of deciding only after opposition has been filed what part of their evidence is intended to prove what contention. At a minimum, the TA defendants' motion should be denied without prejudice to refiling in a form compliant with the Rules of this Court.

10

B.      Decision on The Motion Should be Deferred Pending Discovery

The TA Defendants have attempted a pre-emptive strike,  to foreclose discovery, not

with a motion to dismiss, but with a motion for summary judgment.   The Second Circuit has

held that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff

who has not been afforded an adequate opportunity to conduct discovery." Hellstrom v. United

States Department of Veterans Affairs, 201 F.3d 94 (2d Cir. 2000).  Only where the party

opposing summary judgment gives the Court no basis to believe that discovery will provide

material evidence should summary judgment be granted. Meloff v. New York Life Insurance

Co., 51 F. 3d 372, 375, (2d. Cir. 1995), distinguishing Trebor Sportswear Co. v. Limited

Stores, Inc., 865 F.2d 506 (2d Cir. 1989), in which there was no reason to believe that

evidence would show a written instrument to defeat a statute of frauds defense.

Under F.R. Civ. P. Rule12 (b), a motion to dismiss can be converted to one for

summary judgment if matters outside the pleadings are submitted "and not excluded by the

court."  This Court should exercise its discretion, since there has been no opportunity for

discovery, to exclude the TA Defendants' evidence and resolve the motion as one to dismiss

for failure to state a claim.

In requesting an opportunity for discovery prior to consideration of summary judgment,

pursuant to F.R. Civ. P. Rule 56 (f), a party should provide an affidavit showing "(1) what facts

are sought and how they are to be obtained, (2) how these facts are reasonably expected to

create a genuine issue of material fact, (3) what efforts affiant has made to obtain them, and

(4) why the affiant was unsuccessful in these efforts." Meloff, supra, quoting Hudson River

Sloop Clearwater, Inc. v. Department of the Navy, 891 F. 2d 414, 422 (2d Cir. 1989).

11

In the case at bar, there has been no F.R.Civ P. Rule 26(f) conference. Plaintiff has thus had no opportunity to conduct discovery against the TA defendants. See F.R.Civ.P. Rule 26 (d). This disposes of the elements of attempts to obtain facts from the defendants and why they have been unsuccessful. Plaintiff has been barred under the Rules from seeking discovery that would disclose material evidence in the possession of the TA defendants. The remaining issues are addressed below, and in the accompanying declaration of counsel.

The TA Defendants have submitted as evidence of a version of the incident which they characterize as "a misunderstanding" the declaration of a dispatcher, and what purports to be the transcript of an exchange between the bus operator and the central operation office. Plaintiff has had no opportunity to depose either the operator who offered a self-serving version of events during the radio transmissions, nor the dispatcher who arrived and immediately obtained Plaintiff's permission to strap her in, to thus test the veracity of their accounts. The dispatcher's declaration acknowledges that "[a]ll wheelchairs should be secured in the bus while the bus is moving" (Defs. Exh. E, ¶ 7) and asserts that "it is standard procedure for the Transit Defendants' bus operators to secure restraining straps on the bus" (id., ¶ 5), but neither acknowledges nor addresses Plaintiff's assertion that Bus Operator Gregory failed to follow this procedure. ( Amended Complaint, Defendants' Exh. A, ¶ 83; Plaintiff's affid. ¶ 4).

The TA Defendants argue that they are only liable if their discriminatory conduct was intentional. Plaintiff has offered to prove that the TA Defendants' failure to train their personnel caused the denial of her rights. Direct evidence of the TA Defendants' lack of adequate training is in the exclusive possession of Defendants. If there is evidence in Bus Operator

12

Gregory's personnel history of past incidents which should have indicated a need to provide him with additional training, The TA Defendants have exclusive possession of that information. If the TA Defendants federally mandated self-evaluation discloses that they were aware of complaints that should have been corrected which could have averted this incident, that, too, is in their exclusive possession.

As noted in counsel's declaration, there is reason to believe that an opportunity to collect the testimony of non-party witnesses who have utilized the TA defendants' bus system in wheelchairs would reinforce the evidence that the Plaintiff's experience grew out of the failure of the TA defendants to adequately train, supervise and discipline their employees concerning the accommodation of wheelchair users on public buses.

The TA Defendants have submitted as evidence of a version of the incident which they characterize as "a misunderstanding" the declaration of a dispatcher, and what purports to be the transcript of an exchange between the bus operator and the central operation office . Plaintiff has had no opportunity to depose either the operator who offered a self-serving version of events during the radio transmissions, nor the dispatcher who arrived and immediately obtained Plaintiff's permission to strap her in, and to thus test the veracity of their accounts.   The dispatcher's declaration acknowledges that "[a]ll wheelchairs should be secured in the bus while the bus is moving" (Exh. E, ¶ 7) and asserts that "it is standard procedure for the Transit Defendants' bus operators to secure restraining straps on the bus" (id.,  ¶ 5),  but neither acknowledges nor addresses Plaintiff's assertion that Bus Operator Gregory failed to follow this procedure. ( Amended Complaint, Defendants' Exh. A, ¶ 83; Plaintiff's affid**., ¶ 4). Deposition of the dispatcher will therefore be useful in clarifying this

factual issue.

The TA Defendants also assert that the Plaintiff did not appear for a notice of claim hearing, and that therefore her common law claims should be dismissed. However, this assertion is premised on the contested allegation that the notice of a hearing was actually mailed and delivered to Plaintiff (See Plaintiff's affid., ¶ 11, and the declaration of the undersigned counsel). Defendants also assert that they were hampered in investigating the claim because of errors in the Notice of Claim, but acknowledge the discretion of the Court to disregard those errors where they do not prejudice the public authority which received the notice. (Defendants' Memorandum of Law at p. 9, citing <u>D'Allesandro</u> v. <u>New York City Transit Authority</u>, 83 N.Y. 2d 891 (1994); GML §50-e (6);).

<u>D'Allesandro</u>, <u>supra</u>, cited by the Defendants, holds that an evaluation of the adequacy of a Notice of Claim must take into account what was learned at the 50-h hearing. Since it has not been shown by uncontested evidence that Plaintiff ever had an opportunity to appear at a 50-h hearing of which she was on notice, discovery on this issue is appropriate, and granting of Defendants' sought relief is at least premature.

Defendants assert that they were prejudiced in their ability to adjust the claim prior to the commencement of litigation. (Defendant's Memorandum, <u>supra</u>.) However, when they chose to do so, Defendants clearly had the ability to pinpoint the bus line, which may have been misidentified, although the fact that the incident occurred on a MaBSTOA bus stopped near Confucius Plaza was accurately provided. The date of the incident was given as one day earlier than the day it occurred in the notice of claim, which gave the date as "on or about" and was not rejected for that degree of ambiguity by the TA defendants. The GML provides

14

that a defect in the form of the Notice is waived if the Notice is not returned within ten days. The date was correctly stated in the Amended complaint.

According to Defendants, there was a discrepancy in the time stated in the Notice of Claim. This refers to the difference between a time of approximately 5:00 p.m. when the Plaintiff boarded the bus, and a correct time of approximately 6:00 p.m. Unless there was more than one incident that weekend of a MaBSTOA bus delayed in its rounds in the Chinatown area because of a dispute between a wheelchair rider and the bus operator, it is difficult to comprehend how the Defendants were prevented from adjusting the claim prior to joining issue in the litigation by these errors.

If the purported prejudice was the thwarting of Defendants' ability to adjust t he claim prior to the commencement of litigation, the Court may take judicial notice that the Defendants obtained a delay of several months duration in their time to respond to the Amended Complaint. While discussions of compromise are generally considered inadmissible, the Defendants, in making this argument, open the door to disclosure to the Court that there has been absolutely no attempt on their part to seek to adjust the claim since learning all that they needed to know to do so. It thus becomes apparent that the TA defendants are invoking the provisions of the GML and the Public Authorities Law not as a shield against unnecessary litigation, but as a sword to prevent a claim which they have no interest in compromising or adjusting from being heard on its merits.

In light of all the above, consideration of dismissal of the common law claim should await an opportunity for Plaintiff to obtain discovery to prove a) that there was no notice sent of the purported scheduling of a GML § 50-h hearing, and that b) the Defendants never gave

15

authorization for the adjustment of the claim, even at a penurious level, once they were thoroughly aware of all the facts they needed to give such authority to their counsel.

The TA Defendants argue that they are only liable if their discriminatory conduct was intentional. Plaintiff has offered to prove that the TA Defendants' failure to train their personnel caused the denial of her rights. Direct evidence of the TA Defendants' lack of adequate training is in the exclusive possession of Defendants. If there is evidence in Bus Operator Gregory's personnel history of past incidents which should have indicated a need to provide him with additional training, The TA Defendants have exclusive possession of that information. The TA defendants are mandated by Department of Transportation regulations to conduct periodic self-evaluations, and to submit the results of these self-evaluations to the Federal Transportation Administration. If the TA Defendants' federally mandated self-evaluation discloses that they were aware of complaints that should have been corrected which could have averted this incident, that, too, is in their exclusive possession.

Point III.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
               SHOULD BE REJECTED ON THE MERITS

A. The Transit Defendants' "Evidence" not in Admissible Form Should be Rejected

Numerous items offered as "evidence" by the TA Defendants flagrantly or subtly violate the Federal Rules of Evidence, and are thus not admissible on a motion for summary judgment.

1. The Dispatcher's Declaration Contains Unqualified Opinion Testimony and Contains Hearsay Lacking a Basis in Personal Knowledge

The dispatcher's declaration includes opinion testimony which violates FRE Rules 701

and 702, based on an inadequate foundation of would-be expertise, i.e., "in my work as a bus dispatcher and, prior to that time, as a bus operator, I have frequently interacted with passengers who use automated wheelchairs." The dispatcher opines that: "an automated wheelchair is more secure with power off and the axle locked than with the power on..." (Defendants' Exh. E, ¶ 7). This is contrary to the experience of Robin Stephens, (Plaintiff's Affid., ¶ 9), whose firsthand experience concerning her operation of her wheelchair is indisputably admissible. .

Insofar as it contains what purports to be an account of the facts, the dispatcher's affidavit, based in part on "belief and on review of the records of the incident held by the Transit Defendants" (Defendants' Exh. E, ¶ 2), fails the test of admissibility for affidavits submitted in support of summary judgment.  F.R. Civ. P Rule 56 (e), requires that such affidavits be made on personal knowledge, and show the competency of the affiant to testify on the matter.

2. The Tape Transcript is Not Authenticated

Defendants append what purports to be the transcript of an exchange between the bus operator and the central operation office. The production of an uncertified transcript violates both Hearsay rules, FRE Rules 803 (6) and 902 (11), and the Best Evidence rule, FRE Rule 1002.

3. The Excerpts from Power Chair Operating Manuals Are Inadmissible as Hearsay and are Irrelevant

Each of the operating manuals addresses the safe operation of a single model of wheelchair. It is dubious whether the operating manuals themselves can be characterized as

17

business records or otherwise within a hearsay exception.  For instance, a wheelchair manufacturer's claims on what constitutes safe operation may be tilted in the direction of limiting its own potential liability by establishing parameters which will insulate it from suit.  More fundamentally, the texts have no relevance to this case.  It is clear that the compendium did not include every power chair manual available on the web, since it excluded the most critical for the purposes of this suit, the model operated by Ms. Stephens, the "Invacare Action Storm". ( Stephens affid, ¶ 10).  A selection of power chair operating manuals by a litigant, without explanation of the sampling process, does not even assure the Court that the sampling has not been made selectively with a view to supporting the conclusion asserted. Even aside from this possible skewing, the offer of proof of how other wheelchairs operate fails the test of relevance.  It does not make it more probable that Plaintiff's wheelchair operated with an automatic brake when turned off, or that it was safer when turned off and not strapped in.  See FRE Rule 402.  Additionally, Defendants' Exh. H is an exact, word for word, copy of the text of Exh. F.  It is therefore excludable as cumulative, while having minimal probative value, under FRE Rule 403.

     4.  The Opinion of Counsel is Inadmissible Non-Expert Opinion

     Counsel for the TA Defendants, along with her introduction of the wheelchair operating manuals, seeks to opine on their meaning.  As a non-expert, her opinion adds nothing to what the reader can discern from the manuals themselves/ Her characterization of one of her conclusions as "common sense" notwithstanding, the proper and safe operation of a power wheelchair is not a subject within the ken of the lay person, and defendants' counsel has no expertise to make her opinion admissible.

5. Irrelevant Documents are Submitted Concerning a Purported Notice of Hearing

The TA Defendants assert that the Plaintiff did not appear for a notice of claim hearing, and that therefore her common law claim should be dismissed. However, this assertion is premised on the contested allegation that the notice of a hearing was actually mailed and delivered to Plaintiff.

The notice, Defendants' Exh. C, not certified by a person with knowledge, is no evidence that it was kept in the ordinary course of business, nor that it was mailed to Plaintiff or her counsel. (See Plaintiff's affidavit, ¶11 , and the declaration of Plaintiff's counsel, denying receipt.)  It is thus inadmissible based on the grounds of both irrelevance and hearsay. FRE Rule 104 (b) and FRE Rules 803 (6) and 902 (11).

B.    Material Facts are in Controversy as to Each Cause of Action so That Summary
        Judgment Should be Denied on the Merits

Each of the claims in the amended complaint turns on issues of fact which prevent the grant of summary judgment. Defendants advance the claim in their memorandum of law that the bus operator wanted Plaintiff to turn off her wheelchair so that he could strap her in. (TA Defendants Memorandum of Law, at p. 6.) Whatever was in his mind, or in his transmissions to the Control Center, Plaintiff swears that the operator never offered to strap her in.  (Defendants' Exhibit A,  ¶; Plaintiff's affid., ¶ 4).  She immediately assented when the dispatcher asked for permission to strap her in. (Defendants' Exhibit A,  ¶; Plaintiff's affid., ¶ 12).

Defendants assert that the wheelchair was safer with the power off, because wheelchairs automatically brake when they are turned off. Their purported evidence for

this proposition is a sampling of pages on safety from wheelchair operating manuals downloaded from the internet, and the observations of the dispatcher, as a dispatcher and bus operator, (Defendants' Exhs. E-K). Defendants also claim that this is supported by "common sense." (Defendants Memorandum, p. 7.) Plaintiff has directly challenged the assertion that she would have been safer in her wheelchair, with the wheelchair unstrapped *and* turned off. (Plaintiff's affid., ¶ 9).

Moreover, Defendants' evidence does not prove the proposition that wheelchairs brake more effectively when turned off. Exh. G describes a wheelchair with "two powerful brake systems," the electrical brake, and the mechanical brake. The latter come into play only once the electrical brake has slowed the chair down, or if the electricity is cut off. The reasonable inference is that the electrical brake is the more powerful of the two.

Plaintiff has not had an opportunity to seek production of documents such as the Bus Operator's Guide to Customer Service, and the Dispatcher's Guide, (mentioned in <u>Stewart</u>, <u>supra</u>, 2006 U.S. Dist. LEXIS 4279, p.2), relevant to the training of bus operators and dispatchers, and thus to the required showing of deliberate indifference by the TA Defendants. But there is at least a question of fact, based on the conduct of Bus Operator Gregory whether Defendants have failed to adhere to the mandate of the ADA and its implementing regulations to assure that their personnel are to "trained to proficiency." 49 C.F.R. § 37.173, because they have chosen to invest their resources elsewhere. This issue of fact is supported by Plaintiff's sworn statement that on at least fifty percent of the occasions she has ridden New York City buses, bus operators have not offered to secure her chair. ( Plaintiff's affid, ¶ 5).

.        Defendants also assert that wheelchairs which are powered on are subject to

interference by radio transmissions, and cite to the operating manuals that they have produced. These manuals make clear, however, that it is proximity to the source of the radio waves which may cause concern.  At least one wheelchair manufacturer assures its users that the chair is not vulnerable to this interference.   Plaintiff's Invacare Wheelchair Operating Manual states that "current technology is capable of achieving at least a 20 V/m immunity level, which would provide useful protection rom th more common sources of radiated EMI [ElectroMagnetic Radiation.]"  (Plaintiff's Exh. 1, p. 38.) The closest a wheelchair passes to the radio mechanism in the operator area is when the passenger is boarding, and the chair is necessarily powered on.

If the TA Defendants experience with their bus radios disrupting wheelchair power, it would be incumbent upon them to take corrective steps.  There is no evidence, whatsoever, that this was a concern at the time Plaintiff was directed by the bus operator to power off her wheelchair.  His use of the radio while on the bus to contact the Control Center would have increased any hazard he perceived.

At most, the Defendants' evidence raises issues of fact on the subject of the safe operation of a wheelchair aboard a bus.  Defendants' own dispatcher's declaration concedes the central aspect of this issue, that "*[a]ll* wheelchairs should be secured in the bus when the bus is moving...". Plaintiff complains that the operator never offered or attempted to secure her wheelchair.  His demand that she turn off her wheelchair arose in this context. ( Plaintiff's affid. ¶ 4).

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

21

issue for trial." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).    In assessing whether a genuine factual dispute exists on a motion for summary judgment, all ambiguities must be resolved and all inferences drawn in favor of the non-movant.  <u>Golden Pacific Bancorp</u> v. <u>F.D.I.C.</u>, 273 F.3d 509, 514 (2d Cir. 2001).  Employing these standards, Plaintiff is clearly entitled to go forward with her case.

Point V.    PLAINTIFF'S CAUSES OF ACTION AGAINST THE TA DEFENDANTS SHOULD NOT BE SEVERED FROM HER SUIT AGAINST THE SUPERSHUTTLE DEFENDANTS

The TA Defendants have sought to have the suit against them severed from the suit against SHUTTLE ASSOCIATES and SUPERSHUTTLE INTERNATIONAL, INC., ("the Supershuttle Defendants.)" They argue that the two claims have nothing in common except that they involve the same Plaintiff.  This statement is at best hyperbole.

The TA defendants are correct in noting that different provisions of the Americans with Disabilities Act apply to them than to the private transportation provider which was supposed to take Plaintiff to and from the airport on the occasion of her visit to New York City.  However, both Titles of the ADA regarding the provision of transportation to persons with disabilities mandate the promulgation of regulations by the Secretary of Transportation within a year of the passage of the statute.  42 U.S.C. § 12164; 42 U.S.C. § 12184. It would hardly be surprising, then, to find that not only the statute itself, but the Secretary's regulations created obligations on transport providers which have strong parallels.  Clearly, it can be anticipated that charges to a jury will address these parallels, as well as the

The events sued on in each of the incidents involved stressors which effected Plaintiff primarily in that they inflicted upon her emotional distress, as she experienced the inadequacy and inequality of the provision of services to her as a person with disabilities. These, and the emotional sequelae of those experiences, occurred over the course of a single weekend.  While Title III does not provide for damages against the Supershuttle defendants, the pendent State and local law claims do.

22

Severance of the claims will invite each set of defendants, in a separate trial, to point to the experience that the Plaintiff suffered at the hands of the other to explain her emotional revulsion at the recall of the weekend's events.  A single trial, on the other hand, will call upon the jury to determine the reasonable compensatory damages which should be awarded to Plaintiff based on the totality of what she experienced, and to make awards against the two sets of defendants proportionally based upon the degree to which Plaintiff's injuries derive from her experience with them.

Neither case, realistically, is a "big" case, involving potential awards of millions of dollars.  For Plaintiff, who resides in Denver, CO, the burden of pursuing two trials in New York is manifestly greater than a single trial.  Parallel discovery involving depositions in two cases will also significantly increase the burden on her.  Defendants, on the other hand, will not suffer a significant additional burden from keeping the cases together.

The only prejudice which the TA Defendants can legitimately point to is the danger of confusing the jury with the facts of the incidents involving two sets of defendants, and the applicable law.  This, however, is no different from the problems which typically arise whenever a second tort compounds the injuries to a single plaintiff.  Courts do not routinely grant severance on this basis, relying instead upon the ability to instruct the jury on the issues, and to elicit the jury's findings through special verdicts to insure that there is not a confusion in the ultimate findings and awards of damages.

Point VI.    PLAINTIFF'S  CROSS-MOTION  FOR  LEAVE  TO AMEND
             SHOULD BE GRANTED

Appended to the motion papers submitted herewith is a proposed amended complaint. The only amendment sought is the substitution of the identifiable "Bus Operator Gregory," whose name is available to Plaintiff through the document produced by Defendant purporting to be a transcript of the communications with the Control Center.  There is no perceivable prejudice to Defendants in permitting this substitution, and at least insofar as it relates to the

federal causes of action and the state law causes pertaining to discrimination, the three year

Statute of Limitations has yet to run, so that amendment is not futile. *Aaron David Frishberg*

CONCLUSION

For the reasons stated herein, the TA Defendants' motion to dismiss or for summary

judgment, or alternatively, for a severance, should be denied, and Plaintiff's cross-motion to

amend the complaint to substitute the name of Bus Operator Gregory for the pseudonymous

"Bus Driver John Doe" should be granted.

Respectfully submitted,

Aaron David Frishberg (AF 6139)
A member of the Bar of this Court
Attorney for Plaintiff Robin Stephens

24