State of Colorado    )
County of Denver    ) ss:

Robin Stephens, being first sworn, deposes and says as follows:

1.    I am the Plaintiff in the within action. I make this affidavit in opposition to
      summary judgment.

2.    I am a person with a disability which limits me in the major life functions of
      walking and standing, and rely on a wheelchair to assist me in transporting
      myself.

3.    On Sunday, April 9, 2006, at or about 6 p.m., I boarded a New York City Transit
      bus at Confucius Plaza in lower Manhattan, in my wheelchair, an Invacare Action
      Storm.

4.    I entered the front of the bus, under power, and went to one of the seats which
      raises to allow space for a wheelchair. Although there were straps to secure the
      chair, the bus driver did not at that time, nor at any time during the incident, offer
      or attempt to strap the wheelchair to secure it.

5.    Unfortunately, this is consistent with my experience on New York City Transit
      buses, where at least half the drivers do not offer to secure the wheelchair when
      I board the bus.

6.    This driver, however, also began insisting that I power off the wheelchair.
      Although I repeatedly asked him "why" over the next forty minutes, he did not
      respond, except to repeat the demand that I turn off the wheelchair power before
      he would proceed.

7.    At some point, perhaps ten to fifteen minutes into the incident, the driver
      announced to all the passengers that they would have to take the next bus
      because I wouldn't turn my wheelchair power off and all the passengers but my
      friend and I filed off the bus.

8.    This announcement, to a bus full of passengers, added humiliation to the anger I
      was feeling at the way I was being treated. The other passengers, of course, did
      not understand that for me, not turning off my wheelchair when I was not
      strapped in was not only an issue of principle but of safety.

9.    When my wheelchair power is on, and I am not strapped in, I can operate the
      joystick to lessen the extent that I and the wheelchair will be impacted if the bus
      comes to a sudden stop. Especially in the seats that have a solid in the back, I
      push the joystick back without fear of hurting anyone. I have a very good control
      of my wheelchair and know my wheelchair's abilities. With the power off, I have
      no control of where my wheelchair goes. If the wheelchair is off and not secured,

and the bus stops suddenly, the wheelchair and I will both go flying. This is less likely if the chair is on, because I can use the power to lessen the impact of the stop.

10.  I have attached a copy of the Operator's Manual for the Invacare Action Storm. (Exhibit1 ). This document is available on the internet at http: // www.invacare. com/ doc_files/1134791.pdf, although Defendants did not include it in their selected exhibits. Notably, it does not contain safety instructions on when the brakes should be used, and it does note about electromagnetic interference (EMI), that "current technology is capable of achieving [an] immunity level which would provide useful protection from the more common sources of radiated EMI."

11.  I never received a notice of a hearing on my common law claims from the TA Defendants, although I regularly received mail at the address on the Notice of Claim.

12.  The statement by Bus Dispatcher Ely is incorrect, to the extent that it minimizes the tension that had developed between the Operator and myself. Dispatcher Ely intervened to resolve the problem caused by the intransigence of the Bus Operator, who refused either to move the bus, or to explain why he wanted my wheelchair powered off but not secured. After Dispatcher Ely asked permission to secure me, I immediately agreed, and he attached the straps from the bus to my wheelchair. I perceived his intervention, which quickly resolved the problem, to be an indication that he at least partly understood that the bus operator had handled the situation inappropriately.

13.  Despite what was stated in the bus operator's communication to the Command Center, at no time during the incident did the bus operator offer to secure my wheelchair to the bus. The explanations offered by counsel for the Transit defendants, which revolve around the premise that there was an intent by the Bus Operator to secure the chair, if only . . . are not only conjecture, but demonstrably false conjecture.

14.  The Transit Defendants mention, gratuitously, that I am a member of the bar. Long before I became a lawyer, I was a human rights activist pressing for the rights of people with disabilities. In the latter role, I had participated in an advisory body on the formulation on the regulations of the U.S. Department of Transportation Federal Transit Administration. That process resulted in a section of the appendix to those regulations, addressing fixed route transit, calling for employees to be "trained to proficiency" in the needs of various people with disabilities. It was clear during my experience with the bus operator who humiliated me and delayed my trip on April 9 that he had *not* been trained to proficiency. Because the Transit defendants are liable for that failure, and it is systemic in my experience, it is respectfully submitted that the Transit Defendants' application to have their motion treated as one for summary

judgment and to have summary judgment granted should be denied.

_____
Robin Stephens

dated: Denver, CO
       October 18, 2007


Subscribed and sworn to before me, this 18th day of October 2007.


Notary signature: _____


Carrie Ann Lucas,  NOTARY PUBLIC

   My commission expires: _Aug 17,_____, 20_08_.

