UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ROBIN STEPHENS,

            Plaintiff,

     -against-

SUPER SHUTTLE, INC., SUPER SHUTTLE     CV-07-5614 (MARRERO, J.)
INTERNATIONAL, INC., NEW YORK CITY
TRANSIT AUTHORITY, MANHATTAN AND
BRONX SURFACE TRANSIT OPERATING
AUTHORITY and "JOHN DOE," NYCT BUS
DRIVER,

            Defendants.

-----------------------------------------------------------------X

## TRANSIT DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT IN WHOLE OR PART, OR, IN THE ALTERNATIVE, SEVER CLAIMS AGAINST TRANSIT DEFENDANTS FROM THOSE AGAINST THE SUPERSHUTTLE DEFENDANTS

MARTIN B. SCHNABEL
Vice President and General Counsel
New York City Transit Authority
130 Livingston Street, 12th Floor
Brooklyn, New York 11201
(718) 694-3889

Ann Burton Goetcheus
Executive Agency Counsel

## TABLE OF CONTENTS

Page

REVIEW OF FACTS ...............................................................................................1

ARGUMENT

THE ACT COMPLAINED OF BY PLAINTIFF IS NOT A DISCRIMINATORY ACT UNDER THE ADA, THE REHABILITATION ACT, NYSHRL OR NYCHRL.........................................1

THE NYCHRL DOES NOT APPLY TO THE TRANSIT AUTHORITY. ..........................................................................................................6

PLAINTIFF HAS OFFERED NO LEGAL BASIS FOR JOINDER OF THE CLAIMS AGAINST THE TRANSIT DEFENDANTS WITH THOSE AGAINST THE SUPERSHUTTLE DEFENDANTS ...............................................................................................7

PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS OF THE PUBLIC AUTHORITIES LAW BARS HER ASSERTION OF TORT CLAIMS WITHOUT A STATUTORY HEARING..........................................................................8

PLAINTIFF'S CROSS-MOTION TO SUBSTITUTE BUS OPERATOR GREGORY FOR JOHN DOE IN THE AMENDED COMPLAINT ......................................................................................................10

CONCLUSION..........................................................................................................10

## TABLE OF AUTHORITIES

**Cases** **Page**

**FEDERAL CASES**

Delgado v. Triborough Bridge and Tunnel Authority,
    485 F. Supp. 2d 453 (S.D.N.Y. 2007).................................................................3, 4

Dorsett v. SEPTA,
    2005 U.S. Dist. LEXIS 18351 (E.D.PA. Aug. 29, 2005) ........................................5, 6

Everson v. New York City Transit Authority,
    216 F. Supp. 2d 71 (E.D.N.Y. 2002) ..........................................................................8

Midgett v. Tri-County Metropolitan Transportation District of Oregon,
    254 F.3d 846 (9th Cir. 2001) ......................................................................................5

Morris v. Northrup Grumman Corp.,
    37 F. Supp. 2d 556 (E.D.N.Y. 1999) .........................................................................7

Muhammad v. New York City Transit Authority,
    400 F. Supp. 2d 198 (E.D.N.Y. 2006) .......................................................................6

Pena v. Brattleboro Retreat,
    702 F.2d 322 (2d Cir. 1983).......................................................................................4

Rose v. The Long Island R.R. Pension Plan,
    828 F.2d 910 (2d Cir. 1987), cert. denied, 485 U.S. 936 (1988)...............................6

Stamm v. New York City Transit Authority,
    2006 U.S. Dist. LEXIS 30076 (E.D.N.Y. Jan. 31, 2006) ..........................................6

Weinreich v. Los Angles Co. MTA,
    114 F.3d 976 (1997).....................................................................................................3

**STATE CASES**

Levy v. City Commission on Human Rights
    85 N.Y.2d 740 (1995) ................................................................................................7

Stauber v. New York City Transit Authority,
    10 A.D.3d 280, 781 N.Y.S.2d 26 (1st Dep't 2004)....................................................5

Tang v. New York City Transit Authority,
    16 Misc. 3d 703, 705 (Kings County Sup. Ct. 2007).................................................7

**DOCKETED CASES**

Stamm v New York City Transit,
    Index no. 13964/07 .....................................................................................................9

## REVIEW OF FACTS

The undisputed facts with respect to Plaintiff's claims against Transit Defendants[1] are: Plaintiff is a resident of California and/or Colorado who uses a wheelchair that, unoccupied, weighs nearly 300 pounds. During a short visit to New York City in April 2006, Plaintiff boarded a bus operated by Transit Defendants on or about April 9, 2006 about 6:30 p.m., Bus Operator ("B/O") Gregory raised the bus seat; Plaintiff placed her wheelchair, in which she sat, in this position reserved for wheelchairs; B/O Gregory requested that she power off her wheelchair, and Plaintiff refused. B/O Gregory then contacted the Transit Defendants' Bus Command Center (known as "Console") for assistance, discharged the remaining passengers to a following bus and awaited the arrival of a supervisor. A Transit supervisor responded to the scene, Plaintiff's wheelchair was secured and Plaintiff was driven directly to her destination, after a delay of about thirty minutes. Plaintiff's claims against the SuperShuttle Defendants are wholly unrelated to those against the Transit Defendants. Plaintiff's justification for joinder of these unrelated claims is solely for Plaintiff's purported convenience and economy in litigating unrelated and minor claims.

## ARGUMENT

**THE ACT COMPLAINED OF BY PLAINTIFF IS NOT A DISCRIMINATORY ACT UNDER THE ADA, THE REHABILITATION ACT, NYSHRL OR NYCHRL.**

Plaintiff's idiosyncratic, subjective belief that a request to power off her wheelchair is a discriminatory act fails to define an act of disability discrimination actionable under the ADA, the Rehabilitation Act or New York State or City Human

---

[1] New York City Transit Authority ("NYCTA") and Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") are jointly referred to herein as "Transit Defendants," while SuperShuttle, Inc. and SuperShuttle International Inc. are referred to as the "SuperShuttle Defendants."

Rights Law and her claims against the Transit Defendants should be dismissed for that reason. Plaintiff's assertion that she "can operate the joystick [of her power wheelchair] to lessen the extent that I and the wheelchair will be impacted if the bus comes to a sudden stop," Plaintiff Affid. ¶ 9, is insufficient to convert a reasonable request by a bus operator concerned for his own safety that she – temporarily – power off her wheelchair to an actionable claim of disability discrimination under any of these laws. The power wheelchair manuals produced by the Transit Defendants in connection with their moving papers – and the manual for Plaintiff's wheelchair[2] that Plaintiff has produced– contain numerous instructions that advise powering off as a safety precaution.

Plaintiff's argument relating to electrical interference issues and IPOD's and other electronic devices, at 20-21 of Plaintiff's Response, is wholly irrelevant – the basis for the bus operator's request was his concern for his physical safety while securing an occupied wheelchair weighing, empty, nearly 300 pounds, a task that requires him to attach straps from the bus to the frame of the wheelchair. The entries relating to electrical interference cited in the moving papers were intended to illustrate the routine and transitory nature of power off actions for wheelchairs under numerous circumstances, from which the court may take judicial notice that no reasonable person in Plaintiff's position would find a request to power off a discriminatory act. Plaintiff has provided no support for the assertion, Response at 5, that the request was an "illegal directive."

B/O Gregory made his request after he had raised the bus seat and Plaintiff had positioned her wheelchair in the space reserved on the bus, in the context of preparing to

---

[2] Plaintiff has submitted the manual for the power chair she uses as Exhibit 1 to her affidavit. This manual references the advisability of powering off the chair in numerous circumstances on pages 39, 63, 102, 106, 107, and 120. It also, at 56, contains a description of settings of the control for various sensitivities, depending on the user's specific physical condition.

secure her power chair, a task that would place him in close proximity to her wheelchair. Had Plaintiff complied with his request, nothing prevented her, when he resumed his seat, prior to the bus moving, from powering her chair on again. The request for a temporary change in the wheelchair's power setting was not a materially adverse action sufficient to state a claim of disability discrimination, and was certainly not an "illegal" directive.

When confronted by Plaintiff's refusal to comply with his request, B/O Gregory called Console to obtain help and spoke a number of times with Console prior to the arrival of a supervisor. After some time elapsed, the supervisor arrived, Plaintiff's chair was secured and she was driven directly to her destination.

While Transit Defendants have found no ADA Title II cases directly on point, this Court's decision in *Delgado v. Triborough Bridge and Tunnel Authority*, 485 F. Supp. 2d 453, 460 (S.D.N.Y. 2007), addresses an analogous situation in an ADA Title I employment case, and found no adverse act stated by the claim. The *Delgado* defendant planned to replace all computer monitors; plaintiff objected; and, after some delay, a new larger monitor was back-ordered and was eventually received.

The Ninth Circuit decision in *Weinreich v. Los Angles Co. MTA*, 114 F.3d 976, 978-79 (1997), which held that a medical recertification requirement for continued eligibility for a reduced fare program was not "exclusion from participation in the program . . . 'solely by reason of disability'" and, hence, not disability discrimination in violation of ADA Title II or the Rehabilitation Act, also has applicability here. The request here concerned the personal safety of the bus operator, was not "solely by reason of disability," and Plaintiff's refusal was not objectively related to her disability.

Here, Plaintiff refused to power off her wheelchair when asked by the bus operator and gave no reason for her refusal; the bus operator called supervision; after some delay, a supervisor arrived; Plaintiff's wheelchair was secured without her powering it off; and she was driven directly to her destination. Here, as in *Delgado and Weinreich,* the circumstances are not sufficient to state a claim of disability discrimination. No action was taken that was materially adverse to the plaintiff on account of disability from the objective perspective of a reasonable person in the plaintiff's position, considering all the circumstances. The facts that other employees received new monitors prior to *Delgado* and that the other passengers in this case were discharged to the following bus is irrelevant to the analysis.

In *Pena v. Brattleboro Retreat,* 702 F. 2d 322, 325 (2d Cir. 1983), a case concerned with whether a resignation constituted constructive discharge on the basis of age discrimination, in analysis similar to that required here, the court held, as a matter of law, that "[n]o reasonable person would have found [her employer's treatment to constitute] a compulsion to resign . . . [her] case in chief proved only that she strongly disagreed with the business judgments of the [employer] and now seeks compensation for the consequences of her own acts." Here, as in *Pena*, Plaintiff seeks to impose her subjective view. She has not addressed why a request to power off her wheelchair – a temporary change – *compelled* her to refuse to comply and relieves her from responsibility for the consequences of her action – the delay in securement of her wheelchair and travel to her destination. There is no dispute that Transit Defendants sent a supervisor to the scene, that Plaintiff's wheelchair was secured, and she was driven to

her destination, with a total elapsed time of about 30 minutes. *See* Am. Complaint I and Notice of Claim, attached as Exhs. A and B to Goetcheus Dec. I.

Plaintiff's claim concerns a single, temporary delay in transit service. In *Dorsett v. SEPTA*, 2005 U.S. Dist. LEXIS 18351, *3, (E.D.PA. Aug. 29, 2005), a case that presents far more substantive allegations than presented here, where Plaintiff alleged "a dozen incidents of poor service from SEPTA in which [she and her granddaughter] received less assistance than they were entitled to from SEPTA while riding the buses," and involved repeated refusals and objections by bus operators to boarding and securing her grandchild's stroller wheelchair, the court dismissed ADA and section 1983 claims for damages and denied injunctive relief on grounds that there was no evidence that SEPTA acted with discriminatory animus or was deliberately indifferent to the plaintiff's rights or had a policy or custom that caused it to violate the plaintiff's statutory rights.

Here there is no allegation of discourteous language or repetitive incidents. Confronted with Plaintiff's refusal to power off her wheelchair, the bus operator promptly called supervision, and supervision intervened to provide the service desired by the Plaintiff. As the *Dorsett* court, citing *Midgett v. Tri-County Metropolitan Transportation District of Oregon*, 254 F.3d 846, 849 (9th Cir. 2001), reiterates, the ADA "regulations 'do not contemplate perfect service for wheelchair-using bus commuters.' Occasional problems, without more, do not constitute a violation of the ADA." *See also, Stauber v. New York City Transit Authority*, 10 A.D.3d 280, 781 N.Y.S.2d 26 (1st Dep't 2004), citing *Midgett*.

The *Dorsett* court also denied injunctive relief. Here, where Plaintiff is a resident of California and/or Colorado, Frishberg Affid. ¶ 7, and has pled an isolated incident that

occurred during a brief visit to New York City, her claim to standing for injunctive relief is far more tenuous than that in *Dorsett*, where plaintiff was a regular SEPTA rider and experienced several denials. Here Plaintiff's vague allegations that her wheelchair was not secured in other rides on NYC Transit vehicles are not particularized in any way and, in any event, reference a qualitatively different action than alleged here.

Plaintiff's vague and conclusory demands for discovery relating to unspecified violations of federal regulations experienced by third parties who use wheelchairs are unworthy of consideration. The claim brought against Transit Defendants by the Plaintiff, who is a Colorado resident who briefly used Transit Defendants' facilities, concerns a specific instance in April 2006 in which one of Transit Defendants' bus operators asked her, for his safety, to power off her wheelchair so he could secure her wheelchair. It does *not* concern *not securing a wheelchair* or any violation of existing regulations related to wheelchair access to Transit Defendants' facilities. It also does not include any colorable allegation of a real or immediate threat of substantial or irreparable injury to Plaintiff that would justify an injunction against a public entity.

## THE NYCHRL DOES NOT APPLY TO THE TRANSIT AUTHORITY.

Transit Defendants[3] reiterate their request that this court consider the arguments presented in their moving brief, at 10-13, that the federal courts that have ruled against them on this issue have failed to treat the plain language of the statutory amendment in the manner appropriate under *Rose v. The Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d Cir. 1987), *cert. denied*, 485 U.S. 936 (1988), and point to the *Tang* Court's

---

[3] Plaintiff's suggestion that the Transit Defendants' omission of a reference to Judge Townes' decision in *Stamm v. New York City Transit Authority*, 2006 U.S. Dist. LEXIS 30076 (E.D.N.Y. Jan. 31, 2006) is in some way significant is preposterous, given the citation of Judge Townes' more recent, *reported* decision, *Muhammad v. New York City Transit Auth.*, 400 F. Supp.2d 198, 206-09 (E.D.N.Y. 2006), that contains virtually identical reasoning.

thoughtful and persuasive analysis, at 16 Misc. 3d 703, 705 (Kings County Sup. Ct. 2007), applying the *Levy* decision, 85 N.Y.2d 740, to the amended statute. The *Tang* analysis should be applied here, especially since the conduct complained of is not "tangential" to the Transit Authority's core "function and purpose" of providing transportation (as an employment decision might be, according to *Levy*, at 745), but directly involves providing transportation. Transit Defendants request that Plaintiff's claim of discrimination under the NYC HRL be dismissed on this basis.

### PLAINTIFF HAS OFFERED NO LEGAL BASIS FOR JOINDER OF THE CLAIMS AGAINST THE TRANSIT DEFENDANTS WITH THOSE AGAINST THE SUPERSHUTTLE DEFENDANTS

Plaintiff fails wholly to address the operative standard for consideration of severance set forth in *Morris v. Northrup Grumman Corp.*, 37 F.Supp.2d 556, 580 (E.D.N.Y. 1999), and we refer the Court to the discussion at pp. 14-19 in Transit Defendants' moving brief. Plaintiff does not point to the presence of *any Morris* factor militating against severance of her claims against the Transit Defendants, but merely claims that joinder is a convenient way for her, a Colorado resident, to press minor claims in New York, and to aggregate incidents and alleged damages despite the absence of connection among them.

Plaintiff dismisses the burden to Transit Defendants of litigating a minor claim as a multi-claim, multi-defendant case in federal court as de minimis. Transit Defendants disagree and request the court to consider the burden on a publicly funded agency imposed by joinder and, should Plaintiff's claims against the Transit Defendants survive this motion, sever them from those against the SuperShuttle Defendants.

## PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS OF THE PUBLIC AUTHORITIES LAW BARS HER ASSERTION OF TORT CLAIMS WITHOUT A STATUTORY HEARING

In response to Transit Defendants' moving brief, Plaintiff, in her affidavit, ¶ 14, complains that "Transit Defendants mention, gratuitously, that I am a member of the bar." Plaintiff's status as an attorney was referenced because the Notice of Claim she executed under penalties of perjury, misstated the date, the time, the bus line *and* the location of the claimed incident, all material facts within her knowledge.

Plaintiff's description of the incident as the only one "that weekend of a MaBSTOA bus delayed in its rounds in the Chinatown area because of a dispute between a wheelchair rider and the bus operator," Response at 14, is, first, factually erroneous – the M-15 identified in Plaintiff's Notice of Claim is, in fact, a New York City Transit Authority, not MaBSTOA, bus line, that operates out of the 126th Street Depot, while the M-103, on which the incident actually occurred, *is* a MaBSTOA line that operates from a different location, the 100th Street Depot. Second, the premise is silly, ignoring the magnitude of the Transit Defendants' operations (3,000 buses and 10,000 bus operators), the relatively minor delay involved, and presumes hindsight as to the correct facts of the date and time.

As detailed in the McNicholas Declaration, the notice of statutory hearing was produced and mailed in the ordinary course of business of the NYCTA Torts Division and was addressed to Plaintiff's counsel's business address.[4] A presumption of receipt accrues to such properly addressed documents from governmental agencies. *Everson v. New York City Transit Authority*, 216 F. Supp.2d 71, 77-78 (E.D.N.Y. 2002).

---

[4] Plaintiff's affidavit, ¶ 11, re lack of receipt of notice of the statutory hearing scheduled date, is irrelevant – she was a represented party whose statutory hearing notice was sent to her attorney of record, Mr. Frishberg.

Presumption of receipt is reinforced by the Transit Defendants' location of a computer record of the receipt and entry of a telephone request to adjourn the hearing, scheduled for July 6, 2006, that was received on July 3, 2006.[5] *See* McNicholas Declaration, attached to the Goetcheus Declaration in Further Support. Although Plaintiff's counsel, Frishberg Declaration ¶ 7, has offered his certification that he "never received notice of a hearing," there is evidence, in addition to Transit's records of the adjournment of the hearing, for doubt concerning Plaintiff's counsel's *ability* to determine whether he did or did not receive the letter in early July 2006. Transit Defendants present two affidavits, one by a client formerly represented by Mr. Frishberg and one by her replacement counsel, filed in *Stamm v New York City Transit*, Index no. 13964/07, a proceeding in Kings County Supreme Court in May 2007, describing the disarray of Mr. Frishberg's office and files in early July 2006, the exact period of time relevant here. This disarray allegedly resulted in Mr. Frishberg's (and affiants') failure to file a timely notice of claim against Transit Defendants. Goetcheus Dec. in Further Support, ¶¶ 3-5, attaching Exhs. 2 and 3.

Transit Defendants respectfully request, should Plaintiff's claims against them be permitted to proceed, because it is undisputed that Plaintiff has not submitted to a statutory hearing, that Plaintiff be ordered to submit to a General Municipal Law § 50-h hearing as a prerequisite to proceeding with any tort claim.

---

[5] This corrects an error in Goetcheus Declaration I, ¶ 4, that, based on review of paper records, stated that Plaintiff had failed to request an adjournment of the scheduled hearing. As a General Litigation attorney, Ms. Goetcheus does not have access to the computerized Torts claims system and learned of the adjournment only in preparation of this Reply. Transit Defendants apologize for the misstatement.

**PLAINTIFF'S CROSS-MOTION TO SUBSTITUTE BUS OPERATOR GREGORY FOR JOHN DOE IN THE AMENDED COMPLAINT**

Although, contrary to Plaintiff's counsel's representation, Response at 23, no proposed second amended complaint incorporating the substitution of B/O Gregory for John Doe has been served on Transit Defendants or filed in ECF, if claims against them survive this motion, Transit Defendants do not object to the substitution.

## CONCLUSION

For the foregoing reasons, we respectfully request that Transit Defendants' motion to dismiss be granted in its entirety; if any claims against the Transit Defendant survive, such claims should be severed from those against the SuperShuttle Defendants, and that such other and further relief be granted as may be deemed just and proper.

Dated:   Brooklyn, New York
         December 7, 2007

Respectfully submitted,

MARTIN B. SCHNABEL
General Counsel
Attorney for Defendant
130 Livingston Street, Rm. 1233
Brooklyn, New York 11201
(718) 694-3889

By: _____
    Ann Burton Goetchues
    Executive Agency Counsel