```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ROBIN STEPHENS,               :
                              :
              Plaintiff,      :    07 Civ. 5614
                              :
        - against -           :    DECISION AND ORDER
                              :
SHUTTLE ASSOCIATES, L.L.C.,   :
SUPERSHUTTLE INTERNATIONAL,   :
INC., NEW YORK CITY TRANSIT   :
AUTHORITY, MANHATTAN AND      :
BRONX SURFACE TRANSIT         :
OPERATING AUTHORITY, and      :
BUS OPERATOR GREGORY,         :
                              :
              Defendants.     :
------------------------------X
```

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-10-08
```

**VICTOR MARRERO**, United States District Judge.

Plaintiff Robin Stephens ("Stephens") brought this action against defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority (collectively, "Transit Defendants"), Shuttle Associates, L.L.C. and SuperShuttle International, Inc. ("collectively, "SuperShuttle Defendants"), and Bus Operator Gregory ("Gregory")[1] alleging intentional infliction of emotional distress, failure to train and violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), Rehabilitation Act, 29 U.S.C. § 794 et seq. (the "Rehabilitation Act"), New York City Human Rights Law, N.Y. Admin. Code § 8-101 (the "NYCHRL"); and New York State Human

---

[1] By Order dated February 21, 2008, the Court dismissed the action against SuperShuttle Defendants with prejudice and without costs. (See Order dated February 21, 2008, Docket No. 39.)

Rights Law, Executive Law § 290 et seq. (the "NYSHRL"). Transit Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, Transit Defendants' motion to dismiss is GRANTED. Because Transit Defendants' arguments apply with equal force to Gregory, the Court dismisses, sua sponte, the complaint as against Gregory. See Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (citations omitted).

## I. BACKGROUND

The facts summarized below are taken primarily from the Second Amended Complaint ("Amended Complaint") dated January 8, 2008, which the Court accepts as true for the purpose of ruling on the motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

Stephens has a disability, which impairs her ability to walk, and she uses a power wheelchair. Her disability also impairs her speech. Many people have trouble understanding Stephens when she speaks, although most people can understand her if they listen carefully and persistently.

On or about April 9, 2006 at approximately 5:00 p.m., Stephens boarded a bus operated by Transit Defendants. Gregory, the bus operator, asked Stephens to power off her

wheelchair. Stephens asked Gregory why she had to turn the power off but Gregory did not explain. Instead, Gregory repeated his request that Stephens power off her wheelchair. When Stephens would not comply with Gregory's request, Gregory announced to the other bus passengers that they would have to exit the bus and take the next bus because Stephens would not power off her wheelchair. After approximately forty minutes, a supervisor (the "Supervisor") arrived on the scene and relieved Gregory. The Supervisor advised Stephens that she would not have to power off her wheelchair and, after asking Stephens's permission, secured Stephens's wheelchair to the bus. The Supervisor then drove the bus directly to Stephens's destination.

## II. DISCUSSION

A.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court construes the complaint broadly, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers, 282 F.3d at 152. However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation and quotation marks omitted). A court should not dismiss a complaint for failure

to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

B.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To state a claim for intentional infliction of emotional distress, a plaintiff must plead "(I) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002) (citing Murphy v. American Home Prods. Corp., 448 N.E.2d 86, 90 (N.Y. 1983)). Under New York law, "'[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.'" Freihofer v. Hearst Corp., 480 N.E.2d 349, 355 (N.Y. 1985) (quoting Restatement (Second) of Torts § 46 (1977)).

Stephens alleges that Gregory, acting within the scope of his employment by Transit Defendants, intentionally inflicted

-4-

emotional distress, causing her injury. Transit Defendants move to dismiss Stephens's claim on the grounds that Stephens fails to state a claim for intentional infliction of emotional distress, or in the alternate, that Stephens did not comply with the requirements set forth in General Municipal Law § 50-e(2) and New York Authorities Law § 1215(5) because Stephens failed to provide accurate information in the Notice of Claim she filed in this action and failed to appear for a statutory hearing scheduled by Transit Defendants.

Even assuming the allegations in Stephens's Amended Complaint are true and drawing all reasonable inferences in her favor, the Court finds that Stephens has failed to sufficiently plead a claim for intentional infliction of emotion distress. Stephens has not alleged any facts suggesting that Gregory's conduct was "extreme and outrageous." Wiener, 202 F. Supp. 2d at 122. The Court is not persuaded that when Gregory told Stephens to power off her wheelchair without explaining why and ultimately delayed her transportation approximately forty minutes, Gregory's conduct was "'so severe that no reasonable man could be expected to endure it.'" Id. (quoting Restatement (Second) of Torts § 46 cmt. j (1977)); see also Stauber v. New York City Transit Auth., 781 N.Y.S.2d 26, 27 (App. Div. 1st Dep't 2004) (finding that the bus driver's rudeness and profanity did "not meet the

extreme and outrageous conduct standard for the imposition of liability for infliction of emotional distress, whether intentionally ... or negligently") (citations and quotation marks omitted). And Stephens's conclusory allegation that Gregory intentionally inflicted emotional distress is insufficient as a matter of law. See Twombly, 127 S. Ct. at 1964-65 (stating that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); see also Davis v. City of New York, No. 00 Civ. 4309, 2000 WL 1877045, at *10 (S.D.N.Y. Dec. 27, 2000) (stating that "[m]ere conclusory allegations are insufficient as a matter of law to support a claim for intentional infliction of emotional distress.") (citing Ruffolo v. Oppenheimer & Co., No. 90 Civ. 4593, 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991), aff'd, 949 F.2d 33 (2d Cir. 1991)). Accordingly, Stephens's claim for intentional infliction of emotional distress against Transit Defendants and Gregory is dismissed. Because this claim is dismissed for failure to state a claim, the Court will not address the merits of the additional defenses asserted.

C.   FAILURE TO TRAIN

Although it is unclear from the Amended Complaint the specific cause of action Stephens is asserting with respect to her allegations that Transit Defendants failed to adequately

train their personnel, the Court considers the claim to be grounded in negligence.[2] To state a claim for negligence a plaintiff must plead that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) (citations omitted); see also Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000); Vega v. Fox, No. 05 Civ. 2286, 2006 WL 397941, at *5 (S.D.N.Y. Feb. 21, 2006).

Stephens alleges that Transit Defendants failed to train "their personnel to proficiency to properly assist and treat individuals with disabilities ... with appropriate attention to the difference among individuals with disabilities, causing [Stephens] to be discriminated against and to be emotionally injured." (Am. Compl. ¶ 88.) However, "'[r]ecovery for purely emotional damages is extremely limited.'" Jones v. Commerce Bancorp, Inc., No. 06 Civ. 835, 2006 WL 1409492, at *4 (S.D.N.Y. May 23, 2006) (quoting Ornstein v. New York City Health & Hosps., 806 N.Y.S.2d 566, 568 (App. Div. 1st Dep't 2006)); see also Howell, 612 N.E.2d at 701; Johnson v. State, 334 N.E.2d 590, 591-93 (N.Y. 1975).

---

[2] The Court also considers Stephens's claim that Transit Defendants failed to adequately train their personnel as part of her claims under the ADA, Rehabilitation Act, NYCHRL, and NYSHRL. See infra Part II.D-E.

A plaintiff suffering purely emotional injury may recover on a theory of negligent infliction of emotional distress if either "(1) a bystander who was in the zone of danger suffers emotional trauma as a result of their observations or (2) the defendant breaches a direct duty to plaintiff which results in emotional injury to the plaintiff." In re Air Crash Disaster at Cove Neck, Long Island, N.Y. on Jan. 25, 1990, 885 F. Supp. 434, 438 (E.D.N.Y. 1995) (citing Lancellotti v. Howard, 547 N.Y.S.2d 654, 655 (App. Div. 2d Dep't 1989)). The "bystander theory" permits a plaintiff to recover for purely emotional injury "when: (1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citing Bovsun v. Sanperi, 461 N.E.2d 843 (N.Y. 1984)). Here, Stephens does not allege that she was threatened with physical harm nor that she witnessed death or serious bodily injury. She, therefore, does not state a claim under the bystander theory. See Mortise, 102 F.3d at 696 ("[Plaintiff's]" claim ... is fatally deficient both because her own physical safety was never threatened and she did not see [her husband] suffer a serious physical injury.").

The "direct duty theory" permits recovery for purely

emotional injury when a plaintiff "suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety .... The duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696 (citations omitted). Here, Stephens does not allege that Transit Defendants owed a specific duty to her. See St. John v. Rein Teen Tours, Inc., No. 99 Civ. 2537, 2000 WL 977685, at *2 (S.D.N.Y. July 17, 2000) ("[T]he special duty that is required cannot be directed to a class of people but rather must be specific to the particular plaintiff."); Kelly v. Chase Manhattan Bank, 717 F. Supp. 227, 235 (S.D.N.Y. 1989) ("[R]ecovery for negligent infliction of emotional distress is circumscribed to unique facts where a special duty is owed.") (citations and quotation marks omitted). Stephens also does not claim that Transit Defendants' alleged negligence unreasonably endangered her physical safety. See Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000); see also Danielak v. City of New York, No. 02 Civ. 2349, 2005 WL 2347095, at *18 (E.D.N.Y. Sept. 26, 2005) ("Because plaintiff has not established that his physical safety was ever threatened or endangered by defendants, he cannot recover under either [the direct duty or bystander] theory."). Therefore Stephens does not allege any set of facts that "raise a right to relief"

under the direct duty theory. <u>Twombly</u>, 127 S. Ct. at 1964-65. Accordingly, Stephens's claim for failure to train against Transit Defendants is dismissed.

D.   <u>THE ADA AND REHABILITATION ACT CLAIMS</u>

The Rehabilitation Act and ADA (collectively, the "Acts") "prohibit discrimination against qualified disabled individuals by requiring that they receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations." <u>Powell v. National Bd. of Med. Exam'rs</u>, 364 F.3d 79, 85 (2d Cir. 2004) (citations and quotation marks omitted). In the instant action, Stephens alleges that Transit Defendants denied her equal access to public transportation because they failed to train their personnel in violation of the anti-discrimination provision of Title II of the ADA, 42 U.S.C. § 12131 <u>et</u> <u>seq.</u> ("Title II") and Title III of the ADA, 42 U.S.C. § 12181 <u>et</u> <u>seq.</u> ("Title III"). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, ... or operates a place of public accommodation." 42 U.S.C. § 12182(a). Stephens also alleges that Transit Defendants' acts and failure to act caused her to be discriminated against, violating the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because "the standards adopted by [Titles II and III] are, in most cases, the same as those required under the Rehabilitation Act," the Court considers these claims together. Powell, 364 F.3d at 85 (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

To establish a violation under the Acts, Stephens "must demonstrate (1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" Powell, 364

F.3d at 85 (quoting Henrietta D., 331 F.3d at 272). Additionally, to establish a violation under the Rehabilitation Act, Stephens must show that Transit Defendants received federal financial assistance. See 29 U.S.C. § 794(a) (2000); see also Powell, 364 F.3d at 85 (citation omitted).

Transit Defendants do not dispute that Stephens is a qualified individual within the meaning of the Acts, that Transit Defendants are subject to the Acts, or that Transit Defendants receive federal financial assistance. Transit Defendants assert, however, that Stephens has failed to adequately plead that she was denied the benefits of a service or otherwise discriminated against because of her disability. The Court agrees with Transit Defendants.

Stephens relies on the recent decision by the Second Circuit in Camarillo v. Carrols Corp., No. 06 Civ. 4909, 2008 WL 341544 (2d Cir. Feb. 8, 2008), asserting that Transit Defendants discriminated against her because they failed to train their personnel to assist and treat individuals with disabilities. In Camarillo, the plaintiff, Alice Camarillo ("Camarillo"), who was legally blind and able to read only large-print menus, complained that on multiple occasions to defendants' restaurants its employees repeatedly refused to offer her large-print menus, read her only a part of the menu, and otherwise failed to offer her a substitute means of

-12-

learning the contents of each restaurants' menu. In addition, Camarillo alleged that she was often responded to with annoyance or impatience, laughed at and humiliated by the defendants' restaurants' employees, including incidents of being misdirected to the men's restroom and being passed over in favor of other restaurant patrons when it came time to order food. The Second Circuit found that Camarillo sufficiently alleged a violation under the ADA and NYSHRL because defendants' restaurants did not ensure "effective communication" of their menu items, 28 C.F.R. § 36.303(c), thereby denying her "full and equal enjoyment" of defendants' services, 42 U.S.C. § 12182(a).

Camarillo, however, is readily distinguishable from the present case for two reasons. First, Camarillo, unlike Stephens, alleges that she was not afforded a "full and equal opportunity" to enjoy the services at defendants' restaurants because the restaurants did not provide any means to ensure "effective communication" of their menu options. Id. at *3. The Second Circuit explained that the

> ADA ... require[s] owners of public accommodations to 'ensure effective communication with individuals with disabilities.' 28 C.F.R. § 36.303(c). While restaurants are not necessarily required to have on hand large print menus that Camarillo would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who, like Camarillo, are legally blind .... Put simply, Camarillo cannot experience full and equal enjoyment of defendants' services if she is unable to access the list of the

services available to her.

Id. at *3 (citations and quotation marks omitted). Here, Stephens does not allege that Transit Defendants failed to provide effective communication with respect to their transportation services. Although Stephens was delayed approximately forty minutes in arriving at her destination, the Supervisor secured Stephens's wheelchair to the bus and ultimately drove Stephens directly to her destination.

Second, Camarillo, unlike Stephens, pled a pattern of repeated conduct. Camarillo alleged numerous occasions that defendants' restaurants read only part of the menu to her and were unwilling to communicate effectively the range of menu options available to her. The Second Circuit explained that

> Camarillo alleges more than mere rudeness or insensitivity, and more than one or two isolated mistakes. Rather, a reasonable inference to be drawn from her complaint is that defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals. Such a failure to train can constitute a violation of the ADA, which requires owners of public accommodations, with limited exceptions not applicable here, "to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."

Id. at *4 (quoting 42 U.S.C. § 12182(b)(2)(A)(iii); citing Stan v. Wal-Mart Stores, 111 F. Supp. 2d 119, 127 (N.D.N.Y. 2000) ("[U]nder the ADA, [d]efendants can and must ensure that they adopt the proper policies and procedures to train their

employees on dealing with disabled individuals and make reasonable efforts to ensure that those policies and procedures are properly carried out and enforced.")).

Here, Stephens alleges an isolated incident in which Gregory allegedly told Stephens to power off her wheelchair without explanation and delayed her transportation approximately forty minutes. Even assuming the allegations in Stephens's Amended Complaint are true and drawing all reasonable inferences in her favor, based only on one isolated incident Stephens has alleged no set of facts to indicate that Transit Defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals. Arguably, Gregory's conduct may have been rude or insensitive. However, "legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." Camarillo, 2008 WL 341544, at *4 (quoting Camarillo v. Carrols Corp., 05 Civ. 1365, 2006 WL 2795238, at *3 (N.D.N.Y. Sept. 25, 2006)); see also Stauber, 781 N.Y.S.2d at 28 ("The ADA and its implementing regulations do not contemplate perfect service for wheelchair-using bus commuters.") (citations and quotation marks omitted). . Accordingly, Stephens's claim that Transit Defendants violated the Acts is dismissed.

E.   THE NYCHRL AND NYSHRL CLAIMS

Stephens also alleges that Transit Defendants violated the NYCHRL and NYSHRL and that Gregory aided and abetted discriminatory treatment by Transit Defendants. Because the scope of the disability discrimination provisions of the NYCHRL and NYSHRL are similar to those of the ADA and Rehabilitation Act,[3] Stephens's claims under the NYCHRL and NYSHRL are also dismissed. See Camarillo, 2008 WL 341544, at *5 (citations omitted); see also Rodal v. Anesthesia Group of Onondaga, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."); Romanello v. Shiseido Cosmetics Am., No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002) ("[T]he same standards used to evaluate claims under the ADA also apply to cases involving the NYHRL and NYCHRL.").

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 10) of defendants New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority to dismiss the complaint of plaintiff Robin Stephens is GRANTED; and it is further

**ORDERED** that on motion of the Court the complaint as to

---

[3] Although the definitions of "disability" under the NYCHRL and NYSHRL are broader than the ADA definition, see Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001), the parties do not dispute that Stephens has a disability within the meaning of the Acts.

defendant Bus Operator Gregory is dismissed.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         10 April 2008

                                        VICTOR MARRERO
                                           U.S.D.J.